# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

VTP RIVER WOODS LLC,
And VTP A1 LP,

       Plaintiffs,

v.

CITY OF YPSILANTI,
a Michigan municipal corporation,

       Defendant.

Case No. 24-cv-12646

Hon. Matthew F. Leitman
Mag. Judge Kimberly G. Altman

**FIRST AMENDED COMPLAINT
AND JURY DEMAND**

## FIRST AMENDED COMPLAINT

Plaintiffs VTP River Woods LLC, and VTP A1 LP (collectively "VTP") complain against defendant City of Ypsilanti ("City") as follows:

## PARTIES

1.     Plaintiff VTP River Woods LLC is a Delaware limited liability company that is registered to conduct business in Michigan.

2.     Plaintiff VTP A1 LP is a Delaware limited partnership that is registered to conduct business in Michigan.

3.     The City of Ypsilanti is a Michigan municipal corporation located in Washtenaw County, Michigan.

## JURISDICTION AND VENUE

4.     The Court has jurisdiction over this action under 28 U.S.C. § 1331 as this case involves a federal question under the Constitution and laws of the United States, including the Fifth and Fourteenth Amendments as well as 42 U.S.C. §1983.

5.     The Court has jurisdiction over this action under 28 U.S.C. § 1343(a)(3) and (4) because VTP seeks to redress the deprivation, under color of state law, of rights secured by the United States Constitution.

6.     Venue is proper in the Court pursuant to 28 U.S.C. § 1391 as all of the events giving rise to VTP's claims occurred in this district in Ypsilanti, Michigan.

4938-2910-3617_5

7.    The Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367.

8.    Supplemental jurisdiction is appropriate because VTP's state law claims share a common nucleus of operative fact with their federal claims and the claims are most efficiently resolved together in one court.

## COMMON ALLEGATIONS

### A. VTP owns several rental properties within the City.

9.    The City regulates rental properties through Chapter 18, Article 6 of its Code of Ordinances ("Code"). **Exhibit A**.

10.    VTP is the owner of certain real property within the City, including, 1431 Leforge Road, 1427 Leforge Road, 1433 Leforge Road, 1423 Leforge Road, 720 Green Road, 721 Green Road, 772 Green Road, 725 Green Road, 791 Green Road, 801 Green Road, 815 Green Road, 823 Green Road, 829 Green Road,  773 Green, 721 W. Clark Road, 835 Green Road, 841 Green Road, 847 Green Road, and 853 Green Road (collectively "the Properties").

11.    The 720 Green Road, 721 Green Road, 772 Green Road, 801 Green Road, 1431 Leforge Road, 1433 Leforge Road, 1423 Leforge Road, 1427 Leforge Road, 721 W. Clark Road, 725 Green Road, 791 Green Road, and 773 Green properties are located within, and operated as, the Arbor One Apartments and Townhomes community ("Arbor One"). **Exhibit B**.

3

12.     The 815 Green Road, 823 Green Road, 829 Green Road, 835 Green Road, 841 Green Road, 847 Green Road, and 853 Green Road properties are located within, and operated as, the Arbor One West apartment community ("Arbor West"). Ex. B.

13.     Under Chapter 18, Article 6, Division 3 of the Code, VTP must have a valid Rental Certificate of Compliance ("COC") before they can utilize the Properties as rentals. Ex. A.

14.     For years, VTP leased the Properties as rental units under a COC issued by the City.

15.     Pursuant to Chapter 18, Article 6, Division 3 of the Code, a properties COCs shall expire two years after the date issued. Ex. A.

16.     Based on information and belief, the COC for the Properties are not due to expire until Spring 2025.

17.     As such, the Properties are not due for COC recertification until Spring 2025.

18.     Nonetheless, the Properties have been subjected to a shocking number of unannounced inspections by the City.

19.     The quantity and timing of the inspections are especially alarming given that they are outside of the City's normal practice and because they

4

represent a stark contrast from how the City inspects similarly situated apartment complexes within the City.

**B.  <u>The City alleges complaints exist regarding the Properties but refuses to provide evidence of the alleged complaints that would allow VTP to defend itself against the alleged complaints or rectify the alleged issues.</u>**

20.    On or about August 12, 2024, an Ypsilanti official, Joe Meyers, visited the Properties based on the improper assumption that they were under new management.

21.    During the impromptu visit, Mr. Meyer's spoke with Amy Vujnov, Regional Project Manager of Arbor One and Arbor West.

22.    Mr. Meyers stated that the City had received multiple complaints regarding the Properties and further insinuated that the Properties "are the most complained about properties in the City."

23.    Unaware of the alleged Complaints, Ms. Vujnov immediately requested that VTP and the City schedule a meeting to discuss the alleged complaints.

24.    Ms. Vujnov also voiced her concerns regarding the existence of any complaints and requested copies of the complaints to ensure that the City could substantiate its claims and ensure that the City was properly and timely notifying VTP of any complaints.

4938-2910-3617_5

25.     Additionally, Ms. Vujnov requested copies of the alleged complaints so that VTP could begin the process of rectifying the issues that were the basis of the complaints, if any.

26.     VTP has always been willing to work with the City to resolve any complaints regarding the Properties and ensure that the Properties comply with the Code.

27.     In fact, on several occasions, VTP's attorney contacted the City's Attorney to schedule a meeting to discuss these exact issues.

28.     However, VTP's request to meet and discuss any issues or concerns were denied or ignored.

29.     Based on information and belief, the City has not treated requests by similarly situated property owners in the same manner. In particular, VTP is of the understanding the City has not denied the requests of similarly situated property owners to meet and discuss alleged complaints or denied request for information to substantiate alleged complaints.

C. **After VTP voiced concerns about the City's ability to substantiate its claim regarding the Properties, the City retaliates by simultaneously issuing eighteen exterior inspection correction notices against the Properties.**

30.     Within days of Mr. Meyer's visit whereby Ms. Vujnov questioned the City's ability to substantiate its claim that it received complaints pertaining

6

to the Properties, Ms. Vujnov, received by way of email, eighteen inspection correction notices relative to the Properties. **Exhibit C**.

31.    Notably, the eighteen correction notices pertain to exterior corrections only. Ex. C.

32.    The notices equate to one for every single building at Arbor One and Arbor West. Ex. C.

33.    Each one of the Properties was scheduled for inspection on September 17, 2024, at 9:00 am. Ex. C.

34.    Prior to receiving the notices, VTP received no warning regarding the alleged violations or notice of exterior inspections by the City. Nor was there any request that VTP remedy the issues before the citations were issued.

35.    Additionally, several of the notices included date stamps from weeks before they were provided to VTP. Ex. C.

36.    Prior to Ms. Vujnov voicing her concerns regarding the City, VTP had not been subject to a similar quantity and simultaneous issuance of violation notices from the City.

37.    Based on information and belief, the City has not treated similarly situated property owners in the same manner. In particular, VTP is of the understanding the City has not refused to provide similarly situated property owners with notice of exterior inspections.

7

38.     Additionally, the City has not provided similarly situated property with correction notices that were dated weeks before they were issued.

39.     Furthermore, the City has not simultaneously issued large volumes of correction notices to similarly situated property owners and scheduled each of the re-inspections for the same re-inspection date.

### D. VTP's request for an extension of time to prepare for the eighteen exterior inspections is denied.

40.     On August 13, 2024, more than a month before the scheduled inspection date, VTP formally requested that the City grant an extension and reschedule the inspections so that they could plan a resolution to the City's concerns. **Exhibit D**.

41.     Given the sheer volume of properties to be inspected, VTP required additional time to review and comply with the notices. Ex. D.

42.     The City was aware of the burden it placed on VTP by scheduling eighteen re-inspections for the same date.

43.     Nonetheless, VTP's extension request was arbitrarily denied by Jerry Dunham, Ypsilanti's Building Department Manager.

44.     The City's decision was not in the best interest of the public nor was it tied to any rational governmental interest.

45.     The City should have ensured that VTP was afforded every opportunity to cure the alleged violations at the Properties.

8

46.     Based on information and belief, the City has not treated extension request of similarly situated properties in the same manner. In particular, VTP is of the understanding similarly situated property owners have not been denied extension requests when the request is made in writing, and in advance of the scheduled inspection.

**E. <u>The City schedules formal hearing dates for the exterior corrections and also suspends VTP's COC.</u>**

47.     On September 17, 2024, the City provided VTP with formal hearing notices relative to the eighteen exterior corrections. **Exhibit E**.

48.     Notably, despite the violations being issued in September 2024, the violation notices list each of the offense dates as July 25, 2024. Ex. E.

49.     Additionally, on September 17, 2024, the City suspended VTP's COC. **Exhibit F**.

50.     The City failed to provide VTP with any pre-suspension notice or an opportunity to be heard prior to suspending its COC.

51.     VTP was also denied the opportunity to obtain a temporary COC.

52.     Refusing to issue VTP a temporary COC does not serve any rational governmental purpose.

53.     Based on information and belief, the City has not treated the COC suspension and recertification process of similarly situated properties in the same manner. In particular, VTP is of the understanding similarly situated

9

properties have not been denied the opportunity to obtain a temporary COC or denied the opportunity to schedule a re-certification inspection after the COC expired.

54.     VTP tried on several occasions to meet with the City to discuss the alleged violations and its COC, but each time, the requests were ignored or denied.

**F.  <u>VTP submits a Freedom of Information Act request to the City.</u>**

55.     On September 25, 2024, VTP submitted a Freedom of Information Act ("FOIA") request to the City. **Exhibit G**.

56.     The request sought public records regarding how the City's building violations are determined and issued. Ex. G.

57.     Additionally, the request sought public records regarding the City's treatment of similarly situated apartment complexes within the City, specifically with regard to how the City handles the issuance of building citations, violations, and fines. Ex. G.

58.     The public records sought would contribute significantly to the public's understanding of the City's governmental practices. Ex. G.

59.     On October 2, 2024, VTP received an Amended Cost Estimate for processing the request for $3,353.85. **Exhibit H**.

4938-2910-3617_5

60.   VTP objected to the estimate as unreasonable and requested additional information from the City as to how the estimate was calculated. **Exhibit I**.

### G. The City's exterior correction notices are vague and fail to provide proper notice to VTP as to what violations it must cure.

61.   The City's exterior correction notices are vague and fail to provide proper notice to VTP as to what violations it must cure. Ex. C.

62.   The notices provide a "list of violations." However, the list provides no explanation as to where the alleged violations are located on the multi-unit buildings. Ex. C.

63.   By way of example, the correction notice for 721 Clark Road provides as one of the alleged violations "AC units damaged." Ex. C.

64.   721 Clark Road is a multi-unit building, with 24 dwellings, as such, there is an exterior AC unit for each of the 24 dwelling units. Ex. C.

65.   Notably, the City's exterior correction notice fails to provide any notice as to which of the 24 AC units the City's is citing as damaged.

66.   Furthermore, the correction notice fails to provide any detail as to how the AC units are damaged.

67.   This is only one example of the multitude of vague violations cited within the eighteen exterior correction notices. Ex. C.

11

68.     Additionally, while the notices provide reference to the Code, several Code sections are listed with no detail as to what is relevant to the particular violation. Ex. E.

69.     Despite the vague nature of the correction notices, VTP made every effort to retain a contractor to complete exterior repairs at the Properties.

70.     However, just like VTP, the professional contractors hired by VTP were unable to provide sufficient estimates for services because the notices are unclear as to exactly what needs to be corrected on the Properties.

71.     VTP's contractors requested that VTP ask the City for additional information and photographs to support the list of violations in the correction notices.

72.     Accordingly, given the vagueness of the notices, VTP was forced to contact Mr. Dunham for clarification as to exactly what VTP needed to correct on the Properties.

73.     Specifically, VTP requested copies of any photographs that the City may have regarding the cited violations in order to better understand the work that the City believed needed to be done.

74.     However, despite acknowledging the existence of the requested evidence, Mr. Dunham refused to provide any additional information or evidence to support the cited violations.

4938-2910-3617_5

**H. Instead of acting in the best interest of the community and assisting VTP in its efforts to cure the alleged violations, the City attempts to silence VTP.**

75.     Within a few days of submitting the FOIA request for information regarding the building department's practices and voicing concerns regarding the City's ability to substantiate claims pertaining to the Properties, Mr. Dunham, made biased and retaliatory comments toward VTP.

76.     Specifically, in response to VTP's good faith effort to collect evidence regarding the violation and formal hearing notices, Mr. Dunham told Ms. Vujnov to have VTP's "Big Wig" attorneys request another FOIA for the pictures.

77.     Ms. Vujnov never mentioned VTP's FOIA request during her communications with Mr. Dunham.

78.     Mr. Dunham's statements show that the City was punishing VTP for exercising its First Amendment rights.

79.     Mr. Dunham's comments were intended to silence VTP from future First Amendment activities, including filing legitimate FOIA requests with the City regarding its governmental practices.

80.     Mr. Dunham's actions were also intended to interfere with VTP's ability to defend itself during the formal hearing process.

13

81.     The City has and continues to engage in a pattern and practice of targeting VTP, whereby VTP is subjected to adverse actions by the City in an attempt to silence VTP from future First Amendment activities.

## COUNT I – DENIAL OF EQUAL PROTECTION BASED ON SELECTIVE ENFORCEMENT OF THE YPSILANTI CITY CODE – 42 U.S.C. § 1983

82.     VTP incorporates the preceding allegations as if fully set forth herein.

83.     The Equal Protection Clause prohibits state action that discriminates on the basis of membership in a protected class or that irrationally targets an individual for discriminatory treatment as a so-called "class of one."

84.     As set forth above, the City has selectively enforced the Ypsilanti City Code against VTP, in a manner that differs from its enforcement of the Code against other similarly situated properties and their property owners. Upon information and belief, these properties include, but are not limited to, the Red Lion, River Drive Apartments, Covington Apartment, and Hamilton Crossing.

85.     Upon information and belief, each of these properties represent similarly situated multi-unit apartment complexes located within the City.

86.     The City's discriminatory treatment of VTP was malicious and in bad faith, in that other property owners received preferential treatment and were allowed to: continue leasing their properties and profit from it despite the City having knowledge of Code violations; obtain a temporary COC after a prior COC had

14

already expired; receive notice of property inspections in advance of the inspection occurring; generally obtain extensions for scheduled inspections dates; receive correction notices that sufficiently described the violations alleged by the City; and receive sufficient information and documentation regarding alleged violations that allowed them to timely cure the alleged violations and/or defend themselves against the alleged violations.

87.    The City's conduct, as set forth above, demonstrates a continued pattern, practice, and custom of selectively enforcing the Ypsilanti City Code against VTP.

88.    As evidenced by the deliberate conduct of City Officials, including but not limited to Joe Meyers and Jerry Dunham, the City's custom of selectively enforcing the Ypsilanti City Code against VTP has been a moving force behind VTP's injuries.

89.    The City's illegal actions have been ratified by City Officials with decision-making authority, including but not limited to, Joe Meyers and Jerry Dunham.

90.    By way of example, in their positions as Building Department Manager and Director of Community Services, Mr. Dunham and Mr. Meyers have been directly involved with the similarly situated properties in the City that have been allowed to: continue leasing their properties and profit from it despite the City

15

having knowledge of Code violations; obtain a temporary COC after a prior COC had already expired; receive notice of property inspections in advance of the inspection occurring; obtain extensions for scheduled inspections dates; and receive sufficient information and documentation regarding alleged violations that allowed them to timely cure the alleged violations and/or defend themselves against the alleged violations.

91. The City has also inadequately trained and supervised its employees, as evidenced by the Building Department's persistent failures to provide sufficiently detailed correction notices and persistent failure to correct the same upon notice of the deficiency, as well as the Building Department's failure to respond timely and properly to requests for information and documentation in support of the alleged violations that would allow the respondent to defend itself against the alleged violations.

92. The City's persistent and deliberate actions as described above represent the existence of custom of tolerance for violations of VTP's constitutional rights to equal protection under the Fourteenth Amendment to the United States Constitution.

93. The City's selective enforcement of the Code has caused irreparable harm to VTP and violated its right to equal protection under the Fourteenth Amendment to the United States Constitution.

4938-2910-3617_5

94.     There was no rational basis for the City's selective enforcement against VTP.

WHEREFORE, VTP prays for judgment against the City granting VTP declaratory relief and awarding it actual and punitive damages in an amount to be determined at trial, together with attorney fees authorized by 42 U.S.C. § 1988, plus costs and interest.

**COUNT II – 42 U.S.C. § 1983**
**FIRST AMENDMENT RETALIATION**
**UNDER COLOR OF STATE LAW**

95.     VTP incorporates the preceding allegations as if fully set forth herein.

96.     The Freedom of Information Act ("FOIA") is a law that gives the public the right to request records from governmental agencies, which can help facilitate speech about how the government operates.

97.     As set forth above, VTP exercised its First Amendment rights by submitting a FOIA request to the City on September 25, 2024, regarding how the City's building violations are determined and issued.

98.     VTP's FOIA request concern matters of public interest.

99.     Prior to submitting the FOIA request, the City indicated that it would meet with VTP to discuss the alleged violations, however, after the FOIA request was submitted, the City took adverse action against VTP by refusing to respond to any of VTP's request for a meeting.

17

100.   Additionally, as set forth above, VTP also exercised its First Amendment rights by voicing concerns to City officials about the City's ability to substantiate claims that the City received complaints pertaining to the Properties.

101.   Within days of VTP vocalizing its concerns regarding the City's building department and within days of submitting a FOIA request regarding the City's building department practices; *the City's building department* simultaneously issued exterior correction notices for eighteen buildings with twenty-four to thirty dwelling units, all of which were scheduled for re-inspection on the same date.

102.   The City is keenly aware of the burden that simultaneously issuing the voluminous exterior correction notices would impose on VTP.

103.   Nonetheless, the City did so because VTP exercised its First Amendment rights by speaking out against the City and filing a FOIA request that would result in challenges to how the City's building violations are determined and issued.

104.   Following VTP's exercise of its First Amendment rights, not only did the City refuse to meet with VTP, the City also took adverse action against VTP by refusing to provide any evidence regarding the alleged exterior violations.

105.   The City's refusal to provide evidence that supported the exterior corrections caused VTP injury.

18

106.   Specifically, the City is aware that VTP's ability to cure the alleged violations and defend itself at the formal hearings is directly related to the requested evidence.

107.   The City is also aware that VTP's ability to cure the violations and defend itself at the formal hearings is directly related to its ability to lease the Properties and profit from it.

108.   Nonetheless, the City intentionally withheld the requested documentation and information.

109.   The City's conduct constitutes unlawful retaliation against VTP in violation of its rights under the First Amendment.

110.   Such action is intended to chill or silence a person of ordinary firmness from future First Amendment activities, including filing legitimate FOIA requests with the City regarding its governmental practices.

111.   A causal link between the protected conduct and the adverse action may be shown through direct or circumstantial evidence, including showing temporal proximity between engaging in protected activity and suffering an adverse action that may create an inference of causation.

112.   A causal link can also be shown by the disparate treatment of similarly situated individuals.

19

113.   Here, the temporal proximity between VTP's FOIA request regarding how the City's building violations are determined and issued, VTP vocalizing its concerns about the City's ability to substantiate its claims regarding the Properties and the City's adverse actions against VTP creates an inference of causation for this retaliation claim.

114.   In addition, the fact that the City applies and enforces its Code differently as to VTP compared to others creates an inference of causation for this retaliation claim.

115.   The City's conduct, as set forth above, demonstrates a continued pattern, practice, and custom of selectively enforcing the Ypsilanti City Code against VTP.

WHEREFORE, VTP prays for judgment against the City granting VTP declaratory relief and awarding it actual and punitive damages in an amount to be determined at trial, together with attorney fees authorized by 42 U.S.C. § 1988, plus costs and interest.

## COUNT III – VIOLATION OF PROCEDURAL DUE PROCESS AS GUARANTEED BY THE 5TH AND 14TH AMENDMENT OF THE U.S. CONSTITUTION AND ARTICLE 1, SECTION 17 OF THE MICHIGAN CONSTITUTION

116.   VTP incorporates the preceding allegations as if fully set forth herein.

4938-2910-3617_5

117.   The Fifth Amendment to the United States Constitution, made applicable to the State of Michigan by the Fourteenth Amendment, provides that no person shall "be deprived of life, liberty, or property, without due process of law."

118.   The Fourteenth Amendment to the United States Constitution provides that no state shall deprive "any person of life, liberty, or property, without due process of law."

119.   Article 1, § 17 of the Michigan Constitution guarantees that no person shall be "deprived of life, liberty, or property, without due process of law."

120.   VTP has a legal tangible interest based on its ownership of the Properties.

121.   VTP has a legal tangible interest based on its business at the Properties.

122.   VTP has a constitutional right to be heard in a meaningful manner, a fundamentally fair procedure, and be free from arbitrary decisions by the City.

123.   As set forth above, VTP has not received proper notice of the charges against it, an explanation of the evidence, nor the opportunity to sufficiently represent itself fully and fairly throughout the hearing process.

124.   Moreover, due process requires that a party subject to regulation have notice of conduct that is prohibited, and failure to provide the same can render notice unconstitutionally vague. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972);

21

*Dayton Area Visually Impaired Persons, Inc. v. Lee Fisher*, 70 F.3d 1474, 1476 (6th Cir. 1995).

125.   "The due process clauses of the Fifth and Fourteenth Amendments require that laws provide persons subject to regulation under them 'a reasonable opportunity to know what [conduct] is prohibited, so that [they] may act accordingly.'" *Evans v. Kelley*, 977 F. Supp. 1283, 1304 (E.D. Mich. 1997).

126.   VTP prides itself on amicably working with the communities in which it owns and operates property and will address any reasonable concern that the City may have with the condition of its Properties.

127.   VTP, however, needs a better understanding of what those concerns may be and what corrections the City contends is necessary.

128.   As issued, the terms of the City's correction notices are so vague that an ordinary person would lack fair warning of what conduct is prohibited and what corrections the City contends is necessary.

129.   The vagueness of the City's correction notices prohibited VTP's timely response to any notices or citations and its ability to address the City's concerns.

130.   VTP requested that the City identify its concerns so that VTP may best evaluate how to address them, but the City refused to provide additional information. By issuing vague correction notices wherein the City failed to state what corrections

4938-2910-3617_5

the City contends is necessary, and then failing to cure the same, VTP has been denied a fundamentally fair and reliable hearing process.

131.   The City's conduct flagrantly deprived VTP of its constitutionally protected liberty and property interests as enumerated under the United States Constitution and the Michigan Constitution.

132.   The City's conduct, as set forth above, demonstrates a continued pattern, custom, and practice of intentionally failing to provide VTP with sufficient notice of the corrections the City contends is necessary and an opportunity to dispute alleged violations.

133.   The City's illegal actions have been ratified by City Officials with decision-making authority, including but not limited to, Joe Meyers and Jerry Dunham.

134.   Additionally, a fair and impartial decision maker is part of the procedural process that is due. A decision by a biased or corrupt decision-maker may constitute a deprivation of procedural due process.

135.   As set forth above, the City, through its conduct and communications has shown that it is biased against VTP, yet, City officials are making the decisions pertaining to VTP's properties and its compliance with the Code.

136.   As a direct and proximate result of the City's violations, VTP has been denied its constitutional due process rights and has suffered damages.

4938-2910-3617_5

WHEREFORE, VTP prays for judgment against the City granting VTP declaratory relief and awarding it actual and punitive damages in an amount to be determined at trial, together with attorney fees authorized by 42 U.S.C. § 1988, plus costs and interest.

### COUNT IV – VIOLATION OF SUBSTANTIVE DUE PROCESS AS GUARANTEED BY THE 5TH AND 14TH AMENDMENT OF THE U.S. CONSTITUTION AND ARTICLE 1, SECTION 17 OF THE MICHIGAN CONSTITUTION

137. VTP incorporates the preceding allegations as if fully set forth herein.

138. The Fifth Amendment to the United States Constitution, made applicable to the State of Michigan by the Fourteenth Amendment, provides that no person shall "be deprived of life, liberty, or property, without due process of law."

139. The Fourteenth Amendment to the United States Constitution provides that no state shall deprive "any person of life, liberty, or property, without due process of law."

140. Article 1, § 17 of the Michigan Constitution guarantees that no person shall be "deprived of life, liberty, or property, without due process of law."

141. VTP has a legal tangible interest based on its ownership of the Properties.

142. VTP has a legal tangible interest based on its business at the Properties.

143. The suspension of VTP's COC constitutes an unreasonable exercise of the City's police powers against VTP.

24

144.   The suspension of VTP's COC is unconstitutional as applied to VTP because requiring it to cease its leasing of the Properties which have existed for several years is not reasonably related to City's interest in protecting the public health, safety, and welfare. This is especially true given that there is a national housing crisis, whereby individuals all across the state are unable to find affordable housing.

145.   Moreover, the fact that the decision to suspend VTP's COC is directly linked to a City official that has shown bias toward VTP further supports that the suspension is not reasonably related to City's interest in protecting the public health, safety, and welfare.

146.   Furthermore, there is no rational basis for the City's decision to simultaneously issue exterior correction notices for eighteen buildings with twenty-four to thirty dwelling units and also schedule each of the buildings for re-inspection on the same date.

147.   Issuing voluminous citations in this manner is not reasonably related to the City's interest in protecting the public health, safety, and welfare and constitutes an unreasonable exercise of the City's police powers against VTP. Instead, the City's conduct is intended to injure VTP and deprive VTP of its legal tangible interest in its Properties and the legal tangible interest in its business at the Properties.

148.   Furthermore, the City's decision to issue voluminous, vague correction notices against VTP and subsequently refusing to provide available evidence supporting the corrections constitutes conscience-shocking behaviors. Particularly because the City has threatened to deprive VTP of its legal tangible interest in its Properties and the legal tangible interest in its business at the Properties if VTP's fails to comply with the correction notices.

149.   There is no rational governmental interest in the City's refusal to provide information to VTP that is necessary to comply with the City's vague correction notices.

150.   The City's refusal to provide information to VTP that is necessary to comply with the City's vague correction notices is a willful and unreasoning action that fails to take into consideration the facts and circumstances of VTP's request.

151.   Moreover, the City's conduct establishes the City's deliberate indifference to the impact of refusing to provide evidence in support of the voluminous correction notices and how that refusal has prejudiced VTP's ability to defend itself against the alleged violations.

152.   The City's conduct is so arbitrary and capricious such that it shocks the conscience, considering that it has ordered VTP to cease leasing of the property

26

thereby crippling VTP's business operations, all without unbiased and rational justification.

WHEREFORE, VTP prays for judgment against the City granting VTP declaratory relief and awarding it actual and punitive damages in an amount to be determined at trial, together with attorney fees authorized by 42 U.S.C. § 1988, plus costs and interest.

### COUNT V - WRIT OF MANDAMUS/DECLARATORY JUDGMENT

153.    VTP incorporates the preceding allegations as if fully set forth herein.

154.    VTP has a legal tangible interest based on its ownership of the Properties.

155.    VTP has a legal tangible interest based on its business at the Properties.

156.    The City, with full knowledge of this, issued VTP a COC to proceed with leasing the property for monetary gain.

157.    However, as set forth above, the City has suspended VTP's COC.

158.    As set forth above, the City is refusing to re-issue the COC in retaliation for VTP exercising its First Amendment Rights and because the City is biased against VTP.

159.    In light of the City's refusal to re-issue the COC, VTP cannot proceed with leasing its Properties legally, and lawfully, and will lose thousands of dollars in rent and other benefits.

4938-2910-3617_5

160.   To the extent the City is relying on purported code violations to deny re-issuance of the COC, it is likely that the reason is merely a pretext to deny VTP the ability to proceed with its business in retaliation for VTP's exposure of the unlawful practices of the City's building department, inconsistent enforcement of its code, and the FOIA request filed by VTP regarding the same. Accordingly, the City's actions are without a legal basis and not in good faith.

161.   The City, therefore, should be estopped from denying VTP its COC.

162.   VTP requests that the Court issue a writ of mandamus compelling the City to re-issue its COC, or at minimum, issue VTP a temporary COC.

163.   Under the All Writs Act, 28 U.S.C. § 1651, "federal courts may issue all writs necessary or appropriate in aid of their respective jurisdictions, including writs in the nature of mandamus." *Haggard v. Tennessee*, 421 F.2d 1384, 1385 (6th Cir. 1970).

164.   A federal court may issue a writ of mandamus ordering a state official to enforce rights protected by federal law. *Hoffman v. Stump*, 172 F.3d 48; 1998 WL 869972 at *6 (6th Cir. 1998) (unpublished) (citing *CBS Inc. v. Young*, 522 F.2d 234 (6th Cir.1975) and *Benjamin v. Malcolm*, 803 F.2d 46 (2d Cir. 1986); *State ex rel. Skaggs v. Brunner*, 588 F. Supp. 2d 828, 833 (S.D. Ohio 2008).

28

165.   Because VTP's claims seek enforcement of its First Amendment, Equal Protection, and Due Process rights under the Constitution of the United States, this Court may issue a writ of mandamus ordering city officials to enforce those rights.

166.   "In the absence of special statutory authority, a federal court can issue writs of mandamus as ancillary to and in aid of jurisdiction otherwise vested in it. *Haggard v. State of Tenn*., 421 F.2d 1384, 1386 (6th Cir. 1970).

167.   As such, this Court may also exercise supplemental jurisdiction of a state law mandamus claim and issue a writ of mandamus under MCL 600.4411.

168.   There are no other adequate means for VTP to obtain its desired relief, and as set forth above, VTP has a clear and indisputable' right to issuance of the writ.

169.   In accordance with MCL 600.4431, VTP further requests that the Court enter an award of damages and costs.

WHEREFORE, VTP respectfully requests that the Court declare that the City's refusal to re-issue its certificate of occupancy is without a legal basis, issue a writ of mandamus directing the City to re-issue its certificate of occupancy or at minimum, issue VTP a temporary COC, issue an award of damages, and grant such further relief as the Court determines is appropriate, including an award of costs, attorney fees, and fines, as otherwise permitted under MCL 600.4411 and MCL 600.4431 as defendants conduct has not been in good faith.

**<u>RELIEF REQUESTED</u>**

WHEREFORE, VTP prays that the Court grant the following remedies:

a. A declaration that the aforementioned practices and actions of the City constitute unlawful practices in violation of the Equal Protection Clause, Due Process Clause, and the First Amendment of the United States Constitution and the Michigan Constitution;

b. A Declaration from the Court that the City has no valid basis for suspending VTP's Rental Certificate of Compliance;

c. A Writ of Mandamus from the Court requiring the City to re-issue VTP a Rental Certificate of Compliance, or at minimum, issue VTP a temporary Rental Certificate of Compliance;

d. Award VTP compensatory damages;

e. Award VTP punitive and exemplary damages;

f. Award VTP reasonable attorney's fees, costs, and interest; and

g. Award such other relief as the Court deems just and proper.

**<u>JURY DEMAND</u>**

Plaintiffs VTP River Woods LLC, and VTP A1 LP, hereby demand a trial by jury in the above-captioned matter.

4938-2910-3617_5

Respectfully submitted,

BODMAN PLC

By:  /s/ J. Adam Behrendt
J. Adam Behrendt (P58607)
Debani T. Gordon Lehman (P83909)
201 West Big Beaver, Suite 500
Troy, Michigan 48084
(248) 743-6000
*Attorneys for Plaintiffs*
jbehrendt@bodmanlaw.com
dgordon@bodmanlaw.com

December 16, 2024

4938-2910-3617_5