## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

VTP RIVER WOODS LLC,
And VTP A1 LP,

           Plaintiffs,

v.

CITY OF YPSILANTI,

           Defendant.

Case No. 24-CV-12646

Hon. Matthew F. Leitman
Mag. Judge Kimberly G. Altman

**VTP RIVER WOODS LLC AND
VTP A1 LP'S RESPONSE IN
OPPOSITION TO DEFENDANT
CITY OF YPSILANTI'S MOTION
TO DISMISS FIRST AMENDED
COMPLAINT**

---

J. Adam Behrendt (P58607)
Debani T. Gordon Lehman (P83909)
BODMAN PLC
201 West Big Beaver, Suite 500
Troy, Michigan 48084
(248) 743-6000
*Attorneys for Plaintiffs*
jbehrendt@bodmanlaw.com
dgordon@bodmanlaw.com

---

4910-8508-4688_1

## <u>COUNTER-STATEMENT OF ISSUES PRESENTED</u>

1. Should the Court deny the relief sought by defendant City of Ypsilanti under Fed. R. Civ. P. 12(b)(6) when VTP has pled factual content that allows the court to draw a reasonable inference that the City is liable for the misconduct alleged?

  Plaintiffs say, "Yes."

  Defendant says, "No."

  The Court should answer, "Yes"

2. Should the Court deny the relief sought by defendant City of Ypsilanti under Fed. R. Civ. P. 56 as to VTP's Equal Protection claim when there exist numerous genuine issues of material fact concerning whether the City of Ypsilanti selectively enforced the Ypsilanti City Code of Ordinances against VTP, in a manner that differs from its enforcement of the Code against other similarly situated properties and their property owners?

  Plaintiffs say, "Yes."

  Defendant says, "No."

  The Court should answer, "Yes"

3. Should the Court deny the relief sought by defendant City of Ypsilanti under Fed. R. Civ. P. 12(b)(6) as to VTP's First Amendment Retaliation claim when the Complaint on its face sufficiently pled that: (1) VTP engaged in protected speech,

i

4910-8508-4688_1

(2) the City took adverse action against VTP that would deter a person of ordinary firmness from continuing to engage in the protected speech, and (3) the adverse action was motivated in part by VTP's protected speech?

Plaintiffs say, "Yes."

Defendant says, "No."

The Court should answer, "Yes"

4.      Should the Court deny the relief sought by defendant City of Ypsilanti under Fed. R. Civ. P. 56 as to VTP's Procedural Due Process claim when there exists numerous genuine issues of material fact concerning whether: (1) the City's correction notices sufficiently stated what corrections the City contends are necessary; (2) the City's correction notices prohibited VTP's timely response to notices and prohibited VTP's ability to address the City's concerns; (3) the City's refusal to provide additional information to support the correction notices denied VTP a fundamentally fair and reliable hearing process; and (4) VTP received a fair and impartial decision maker as part of the procedural process?

Plaintiffs say, "Yes."

Defendant says, "No."

The Court should answer, "Yes"

5.      Should the Court deny the relief sought by defendant City of Ypsilanti under Fed. R. Civ. P. 12(b)(6) as to VTP's Substantive Due Process claim when the

Complaint on its face sufficiently pled that the City engaged in arbitrary and capricious conduct when it refused to provide information to VTP that was necessary to comply with the City's vague correction notices while also threatening to deprive VTP of its legal tangible interest in its Properties if VTP's failed to comply with the correction notices?

Plaintiffs say, "Yes."

Defendant says, "No."

The Court should answer, "Yes"

6.     Should the Court deny the relief sought by defendant City of Ypsilanti under Fed. R. Civ. P. 12(b)(6) as to VTP's Mandamus claim when the Complaint on its face sufficiently pled First Amendment Retaliation, Equal Protection, and Due Process claims under the Constitution of the United States and the Court is within its authority to issue a writ of mandamus ordering city officials to enforce VTP's federal rights?

Plaintiffs say, "Yes."

Defendant says, "No."

The Court should answer, "Yes"

4910-8508-4688_1

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

Fed. R. Civ. P. 8(a)(2)

Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 15(a)

Fed. R. Civ. P. 56

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986)

*Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 555 (2007)

*Bell v. Johnson*, 308 F.3d 594 (6th Cir. 2002)

*Eckerman v. Tenn. Dep't. of Safety*, 636 F.3d 202 (6th Cir. 2010)

*Evans v. Kelley*, 977 F. Supp. 1283 (E.D. Mich. 1997)

*Haggard v. Tennessee*, 421 F.2d 1384 (6th Cir. 1970)

*Miller v. Currie*, 50 F.3d 373 (6th Cir. 1995)

*Morse v. McWhorter,* 290 F.3d 795 (6th Cir. 2002)

*Range v. Douglas,* 763 F.3d 573 (6th Cir. 2014)

*Tarleton v. Meharry Med. Coll*., 717 F.2d 1523 (6th Cir. 1983)

4910-8508-4688_1

## I.     INTRODUCTION.

The City of Ypsilanti's actions against plaintiffs VTP River Woods LLC and VTP A1 LP are unconstitutional, arbitrary, capricious, and retaliatory. The Complaint presents detailed allegations supporting these claims. A plain reading of the Complaint quickly dispels any assertion that VTP River Woods LLC and VTP A1 LP have failed to state a claim and that the City is entitled to the relief it seeks. The City's motion to dismiss should be denied

Additionally, the City's motion for summary judgment, filed before discovery has occurred, is premature, based on a skewed analysis of the facts, and attempts to circumvent the Court's ability to hear the full scope of evidence and testimony. At this preliminary stage, this case involves numerous material factual issues that require further development through testimony and evidence. The City's motion for summary judgment should be denied and this case should proceed to trial.

## II.    COUNTER-STATEMENT OF MATERIAL FACTS.

VTP River Woods LLC, and VTP A1 LP (collectively, "VTP") owns Arbor One, a multi-unit apartment community ("Properties.") in the City of Ypsilanti. (ECF No. 12, PageID.243 ¶ 10.) For years, VTP leased the Properties as rental units under a Rental Certificate of Compliance ("COC") issued by the City. (*Id*. PageID.243 ¶ 10 & 13); (ECF No. 12-2, PageID.274.) However, despite the Properties not being due for COC recertification until 2025, the City began

1

conducting numerous unannounced and unwarranted exterior inspections in August 2024. (PageID.244 ¶ 16-19.) Over the course of several months, the City has subjected the Properties to scrutiny not applied to other apartment communities. (*Id*. ¶ 18-1); (*Id*. PageID.254 ¶ 82-94.)

On or about August 12, 2024, City official Joe Meyers informed VTP that the Properties were "the most complained about properties in the City." (*Id*. PageID.245 ¶ 20-23.) Unaware of any complaints, VTP's representative requested a meeting with the City to discuss the alleged complaints. (*Id*. PageID.245 ¶ 23.) VTP's representative also voiced her concerns regarding the actual existence of any complaints and requested copies of the complaints to ensure that the City could substantiate its claims and ensure that the City was properly and timely, notifying VTP of any complaints. (*Id*. ¶ 24.)

Within days of VTP questioning the City's claim about complaints at the Properties, the City issued eighteen vague exterior inspection correction notices, one for each building at the Property. (*Id*. PageID.246-247 ¶ 30-32); (ECF No. 12-4, PageID.295-353.) All re-inspections were scheduled on the same day, leaving VTP no time to address or resolve the cited issues. (ECF No. 12, PageID.247 ¶ 33.)

VTP received no prior warning or notice of exterior inspections before the violation notices were issued. (*Id*. ¶ 34.) Additionally, the simultaneous and large

2

number of violation notices were unprecedented until after VTP's representative raised concerns about the City's actions. (*Id*. ¶ 36.)

Given the sheer volume of properties to be inspected, VTP repeatedly requested extensions and rescheduling of the City's eighteen re-inspections to address the concerns, but the City refused each time. (*Id*. PageID.248 ¶ 40-43.) The City's actions, including simultaneous issuance of numerous correction notices, denying reasonable extension requests, and withholding supporting documentation, created an unreasonable burden that made it impossible for VTP to comply with the correction notices. (*Id*. ¶ 42-44); (ECF No. 12, PageID.252 ¶74.) These actions were not in the public's best interest or tied to a legitimate governmental purpose, as the City failed to provide a fair opportunity to remedy the alleged violations. (*Id*. PageID.248 ¶ 44-45.)

VTP has consistently expressed a willingness to address complaints and ensure compliance with the City's code of ordinances. (*Id*. PageID.245-246 ¶ 23 & 26.) However, in order to do so, VTP must have reasonable notice of the issues that it must correct. (*Id*. PageID.251-252 ¶ 61-74.) The City's exterior correction notices are vague, failing to specify the locations or details of the alleged violations. (*Id*. PageID.251 ¶ 61); (ECF No. 12-4, PageID.295-353.) For example, a notice for 721 Clark Road cited "damaged AC units" without identifying which of the buildings' 24 units were affected or providing details on the damage,

3

leaving VTP unable to take corrective action effectively. (*Id*. ¶ 63-66); (ECF No. 12-4, PageID.323.) The lack of clarity in the correction notices also prevented experienced contractors hired by VTP from providing accurate and timely estimates or identifying the specific issues. (*Id*. PageID.252 ¶ 69-71.)

VTP was forced to seek additional information and photographs from the City to clarify what needed to be corrected. (*Id*. ¶ 72.) Specifically, VTP requested photographs and additional evidence from the City to clarify the cited violations, but despite acknowledging the existence of such documentation, the City refused to provide the requested information, hindering VTP's ability to correct the violations and defend itself during formal hearings. (*Id*. PageID.253-254 ¶ 73-74 & 80.) In response, VTP filed a Freedom of Information Act request on September 25, 2024, seeking records about the City's procedures for issuing building violations and its treatment of similar apartment complexes. (*Id*. PageID.250 ¶ 55-57); (ECF No. 12-8, PageID.406.)

Within a few days of submitting the FOIA request about the City's practices, City of Ypsilanti Building Department Manager, Jerry Dunham, made retaliatory and biased comments, mocking VTP's good faith effort to collect evidence regarding the violation and formal hearing notices by suggesting that their "Big Wig" attorneys file another FOIA for the requested evidence. (ECF No. 12, PageID.253 ¶ 75-76.) During the conversation with Mr. Dunham, VTP's

representative never once mentioned VTP's FOIA request to the City. (*Id*. ¶ 77.) Mr. Dunham's statement was intended to punish VTP for exercising its First Amendment rights and discourage future FOIA requests or similar activities. (*Id*. ¶ 78-79.)

On September 17, 2024, the City issued formal hearing notices for the eighteen exterior corrections and simultaneously suspended VTP's Certificate of Compliance (COC). (*Id*. PageID.249 ¶ 47 & 49); (ECF No. 12-6, PageID.359); (ECF No. 12-7, PageID.404.) VTP was not given any prior notice or an opportunity to be heard before the suspension, and they were also denied the chance to obtain a temporary COC. (ECF No. 12, PageID.249 ¶ 50-51.)

The City has systematically targeted VTP with adverse actions to suppress its future First Amendment activities and treated VTP unfairly compared to similarly situated property owners. (*Id*. PageID.254 ¶ 81-94.) Specifically, the frequency and timing of the recent inspections deviate from the City's usual practices and are more stringent than those applied to other property owners. (*Id*. PageID.244-245 ¶ 19.) Furthermore, based on information and belief, other property owners have been treated more favorably in terms of meeting requests, obtaining temporary Certificates of Compliance (COC), scheduling recertification inspections, receiving timely notice of inspections, receiving sufficient notice of alleged violations, receiving fair and reliable

5

formal hearings, receiving unbiased decision makers, and being granted reasonable extension requests. (*Id*. PageID.246 ¶ 29); (*Id*. PageID.247-249 ¶ 37-39 & 46); (*Id*. PageID.249-250 ¶ 53); (*Id*., PageID.254 ¶ 81-94.) Additionally, based on information and belief, the City has not issued large volumes of correction notices and scheduled all re-inspections on the same date for similarly situated properties, as was done with VTP. (*Id.* PageID.248 ¶ 39.)

## III.   LEGAL STANDARDS GOVERNING THE CITY'S MOTION.

### A.   Motion to Dismiss under Fed. R. Civ. P. 12(b)6.

A complaint need only contain a "short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint survives a Fed. R. Civ. P. 12(b)(6) as long as it "state[s] a claim to relief that is plausible on its face" and alleges facts that, if accepted as true, sufficiently "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 555, 570 (2007). "[A] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 555. As the Sixth Circuit has repeatedly emphasized, "[o]n a Fed.R.Civ.P. 12(b)(6) motion, all of the allegations contained in the plaintiff's complaint are accepted as true, and the complaint is construed liberally in favor of the party opposing the motion." *Miller v. Currie*, 50

6

F.3d 373, 377 (6th Cir. 1995) (citing *Mertik v. Blalock*, 983 F.2d 1353, 1356 (6th Cir. 1993); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976)).

Dismissal under Fed.R.Civ.P. 12(b)(6) is warranted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cruz v. Beto*, 405 U.S. 319, 322 (1972). In applying this standard, "'[a] judge may not'"—as asked by Defendant—"grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations.'" *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228 (6th Cir. 1997) (quoting *Columbia Nat'l Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). In sum, "[i]t is not the function of the court to weigh evidence or evaluate the credibility of witnesses." *Miller*, 50 F.3d at 377 (citing *Cameron v. Seitz*, 38 F.3d 264, 270 (6th Cir. 1994)).

**B.    Summary Judgment under Fed. R. Civ. P. 56.**

A court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). No genuine issue of material fact exists for trial unless, by viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of informing the court of the basis for its motion and identifying

those portions of the record that establish the absence of a material issue of fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden only then is the responding party required to present affirmative evidence that establishes a disputed, material fact. *See Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The central inquiry for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. Courts have long recognized that "[s]ummary [judgment] is premature if discovery on a disputed issue has not been completed." *Emmons v. McLaughlin*, 874 F.2d 351 (6th Cir. 1989). Specifically, "a motion for summary judgment filed before the close of discovery is often denied as premature in this circuit . . . ." *CLT Logistics v. River West Brands*, 777 F. Supp. 2d 1052, 1076 (E.D. Mich. 2011) (quoting *Wells v. Corporate Accounts Receivable*, 683 F. Supp. 2d 600, 602 (W.D. Mich. 2010)).

## IV.   ARGUMENT.

### A.   There are genuine issues of material fact that exist concerning VTP's Equal Protection and Procedural Due Process claims, as such, the City's motion for summary judgment must be denied.

First and foremost, the City's motion is indefensibly premature as no discovery has been conducted in this matter. It is well known that "[s]ummary judgment should not ordinarily be granted before discovery has been completed[,] . . . particularly . . . when constitutional and civil rights claims are at issue." *Tarleton v. Meharry Med. Coll.*, 717 F.2d 1523, 1535 (6th Cir. 1983). In the present case, VTP has not had the opportunity to conduct any discovery or conduct depositions that would be used to oppose the City's motion to dismiss or allow the Court to hear the full scope of relevant evidence and testimony.

The City asks the Court to find that VTP has not provided facts to support its Equal Protection and Procedural Due Process claims by arguing that there is insufficient evidence to create a genuine dispute of material fact as to whether VTP has been treated differently than similarly situated comparators and whether VTP was afforded notice and an opportunity to be heard. (ECF No. 14, PageID.438); (ECF No.14, PageID444.). This argument is both untrue and premature. As set forth below, there are several genuine issues of material fact that VTP must have the opportunity to fully explore via the discovery process. The relevant question for the Court to consider when deciding the City's motion for summary judgment is whether

9

further discovery stands a fair chance of uncovering factual support for the Complaint. *Bell Atlantic Corp.*, 550 U.S. at 556. Under the present facts, the answer can only be yes.

The City certainly may deny certain factual allegations, but such arguments are only potentially ripe after discovery has been completed. At this preliminary stage, all well-pleaded factual allegations are accepted as true and only those claims that are "so clearly unenforceable that no factual development could possibly justify recovery" may be dismissed. *El-Khalil v. Oakwood Healthcare, Inc.*, 504 Mich. 152, 159; 934 N.W.2d 665 (2019).

### i.    Equal Protection.

VTP alleges in its Complaint that the City allowed other property owners to "receive correction notices that sufficiently described the violations alleged by the City" but refused to do so for VTP. (ECF No. 12, PageID.255 ¶ 86.) A genuine issue of material fact exists as to whether the City issued correction notices to other properties that sufficiently described alleged violations that would allow them an opportunity to dispute and/or correct the alleged violations and consequently continue to operate and profit from the operation of their respective apartment complexes. Moreover, the City's Exhibit A (ECF No. 14-1, PageID.453) supports this contention and establishes that the correction notices issued to River Drive Properties LLC and Hamilton Crossing II provide a stark contrast in the amount of

detail used to describe the alleged exterior violations[1] notices issued to VTP. Consequently, there remains a dispute of material fact as to whether the City treated VTP differently by failing to provide sufficient notice of alleged violations.

Additionally, the Complaint alleges that the City permitted other property owners to continue leasing their properties and profit from them despite the City having knowledge of their Code violations. (ECF No. 12, PageID.254-255 ¶ 86 & 90.) Conversely, the City argues "the repair notices issued to these other entities largely involved minor, interior repairs (such as loose or peeling paint, missing caulk, dirty vents or fans, etc.) and were a far cry from the abhorrent conditions found at Plaintiffs' properties." (ECF No. 14, PageID.438.) There remains a dispute of material fact as to whether repair notices issued to other similarly situated properties involved only "minor" repairs as alleged by the City. Additionally, there remains a dispute of material fact as to whether additional similarly situated properties exist and to what extent the City has issued notices regarding repairs to those remaining similarly situated properties.

---

1 Pages 38-57 of the City's Exhibit A represent a rental inspection correction notice for 801 Green Road. (ECF No. 14-1, PageID.456-475.) The notice includes a list of interior violations for 801 Green Road. *Id.* Notably however, the claims alleged in VTP's First Amended Complaint pertain only to exterior correction notices issued to VTP. (ECF No. 12, PageID.247 ¶ 31.) As such, pages 38-57 of the City's Exhibit A have no true evidentiary value in this matter.

4910-8508-4688_1

Furthermore, there remains a dispute of material fact as to whether similarly situated properties were granted temporary COC's after a prior certificate had expired. (ECF No. 12, PageID.249-250 & 254-255 ¶ 53 & 86.) The parties also dispute whether the City provided notice to similarly situated properties before inspecting the properties and whether the City granted similarly situated properties extensions for a scheduled inspection date when the request was made in advance. (*Id*. PageID.249 & 154-255 ¶ 46 & 86.) Each of these issues are material to VTP's Equal Protection claim and will speak to whether the City treated VTP differently than its comparators. VTP needs discovery from the City to answer these obvious outstanding questions. VTP respectfully requests that the Court deny the City's motion for summary judgment and permit this matter to proceed to discovery and trial.

### ii.    Procedural Due Process.

It is clear from the City's Response that it misunderstands VTP's Procedural Due Process Claim. The City, argues "Plaintiffs were given notice and the opportunity to be heard....Accordingly, Plaintiffs' procedural due process claim fails as a matter of law." (ECF No. 14, PageID.444.) However, whether VTP actually received the notices and whether VTP was afforded a hearing are not the basis for VTP's Procedural Due Process Claim. Instead, the Complaint alleges "the terms of the City's correction notices are so vague that an ordinary person would lack fair

12

warning of what conduct is prohibited and what corrections the City contends is necessary." (ECF No. 12, PageID.262 ¶ 128.) The Complaint further alleges "[t]he vagueness of the City's correction notices prohibited VTP's timely response to any notices or citations and its ability to address the City's concerns." (*Id.* ¶ 129.) Moreover, "[b]y issuing vague correction notices wherein the City failed to state what corrections the City contends is necessary, and then failing to cure the same, VTP has been denied a fundamentally fair and reliable hearing process" and "deprived VTP of its constitutionally protected liberty and property interests as enumerated under the United States Constitution and the Michigan Constitution."(*Id.* PageID.262-263 ¶130-131.)

The City fails to recognize that due process requires that a party subject to regulation have notice of conduct that is prohibited, and failure to provide the same can render notice unconstitutionally vague. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *Dayton Area Visually Impaired Persons, Inc. v. Lee Fisher*, 70 F.3d 1474, 1476 (6th Cir. 1995). "The due process clauses of the Fifth and Fourteenth Amendments require that laws provide persons subject to regulation under them 'a reasonable opportunity to know what [conduct] is prohibited, so that [they] may act accordingly.'" *Evans v. Kelley*, 977 F. Supp. 1283, 1304 (E.D. Mich. 1997). Accordingly, there remains a dispute of material fact as to whether the City's correction notices sufficiently stated what corrections the City contends are

necessary and whether the City's correction notices prohibited VTP's timely response to notices and prohibited VTP's ability to address the City's concerns.

Moreover, there remains a dispute of material fact as to whether the City's refusal to provide additional information to support the correction notices denied VTP a fundamentally fair and reliable hearing process; and whether VTP received a fair and impartial decision maker as part of the procedural process. (ECF No. 12, PageID.262-263 ¶ 130 & 134-135.) It would be unfair to VTP to leave these stones unturned as all of the information which might contradict the City's arguments would be in the City's own possession.

All that VTP was required to do at the pleading stage was to provide plausible facts with sufficient particularity. VTP did so with regard to each of its claims. Thereafter, VTP should have the opportunity to fully engage in discovery in this matter in order to resolve the genuine issues of material fact that remain in this case. "Summary disposition is premature if discovery on a disputed issue has not been completed." *Emmons v. McLaughlin*, 874 F.2d 351 (6th Cir. 1989). VTP respectfully requests that the Court deny the City's motion for summary judgment and permit this matter to proceed to discovery and trial.

**B.    VTP sufficiently pled its First Amendment Retaliation, Substantive Due Process, and Mandamus claims, as such, the City's motion to dismiss must be denied.**

The City has moved to dismiss VTP's First Amendment Retaliation, Substantive Due Process, and Mandamus claims for failure to state a claim. A plain reading of the Complaint quickly dispels this assertion. The 12(b)(6) standard is not demanding. The facts in the Complaint have been sufficiently pled to state a claim for relief that is plausible on its face for each cause of action alleged in the Complaint.

### i.    First Amendment Retaliation.

The three essential elements of a First Amendment Relation claim are: (1) protected speech by the plaintiff; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected speech. *Bell v. Johnson*, 308 F.3d 594, 602 (6th Cir. 2002); *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

The City argues the Complaint "fails to plead any actual injury that they faced as a result of the submission of their FOIA request." (ECF No. 14, PageID.440.) The City further argues "[a]t most, Plaintiffs have alleged that the City did not respond to requests for an informal meeting...[b]ut any unwillingness of the City to engage

4910-8508-4688_1

in an informal meeting with Plaintiffs prior to the scheduled formal hearing was completely inconsequential." (*Id.*)

The City's arguments are incorrect and misplaced. As an initial matter, the City makes no mention of the fact that VTP's First Amendment Retaliation claim is premised upon not only a FOIA request to the City, but also specific occasions whereby VTP's representative voiced concerns to City officials about the City's building department and the City's ability to substantiate claims that it received complaints pertaining to the Properties. (ECF No. 12, PageID.245 ¶ 24.) The City's contention that VTP's First Amendment Retaliation claim is premised only upon the submission of its FOIA request is false. (ECF No. 14, PageID.439-440.)

Moreover, the Complaint plausibly alleges facts sufficient to satisfy the essential elements of a First Amendment Retaliation claim. The Court must take VTP's allegations in the Complaint as true at this stage of the proceedings. As pled, the Complaint clearly alleges that VTP engaged in protected speech when it submitted a FOIA request to the City and voiced concerns to City officials about the City's building department and the City's ability to substantiate claims that it received complaints pertaining to the Properties. (ECF No. 12, PageID.257-258 ¶ 96-101.)

16

As pled the Complaint alleges that adverse actions were taken against VTP in the form of: (1) simultaneously issuing exterior correction notices for eighteen buildings with twenty-four to thirty dwelling units, all of which were scheduled for re-inspection on the same date; (2) refusing to provide evidence supporting the alleged exterior violations; (3) intentionally withholding requested documentation and information requested by VTP that would have given VTP the ability to cure the alleged violations; (4) intentionally withholding requested documentation and information requested by VTP that would have given VTP the ability to defend itself at the formal hearings; (5) denying VTP a fundamentally fair and reliable hearing process; and (6) refusing to provide VTP with a fair and impartial decision maker. (ECF No. 12, PageID.258-259 ¶ 101, 104, 106, & 108); (ECF No. 12, PageID.262-263 ¶ 130 & 134-135.)

As pled the Complaint alleges the adverse action was motivated at least in part by VTP's protected speech. Specifically, the Complaint alleges "[w]ithin days of vocalizing concerns regarding the City's building department...the City's building department simultaneously issued exterior correction notices for eighteen buildings with twenty-four to thirty dwelling units, all of which were scheduled for re-inspection on the same date." (ECF No. 12, PageID.258 ¶ 101.) Temporal proximity between a VTP's protected speech and the alleged retaliatory action may allow for the inference of a causal connection. *Eckerman v. Tenn. Dep't. of Safety*, 636 F.3d

17

202, 209 (6th Cir. 2010) ("A causal link can be shown through direct or circumstantial evidence, including showing temporal proximity between engaging in protected activity and suffering an adverse employment action that may create an inference of causation") (internal citations omitted). Here, the temporal proximity of only a few days between VTP's FOIA request regarding how the City's building violations are determined and issued, VTP voicing its concerns about the City's ability to substantiate its claims regarding the Properties and the City's adverse actions against VTP creates an inference of causation for the retaliation claim. (ECF No. 12, PageID.260 ¶ 113.)

Additionally, as pled, VTP alleges supplemental facts to otherwise provide the inference of retaliation in response to VTP's protected speech. Specifically, the Complaint alleges immediately after VTP's representative voiced concerns regarding the City's ability to substantiate claims pertaining to the Properties, City inspector Jerry Dunham stated, "to have VTP's 'Big Wig' attorneys request another FOIA for the pictures." (ECF No. 12, PageID.253 ¶ 76.) VTP's representative never mentioned VTP's FOIA request during her communications with Mr. Dunham. (ECF No. 12, PageID.253 ¶ 77.) Mr. Dunham's unprompted statement shows that the City was punishing VTP for exercising its First Amendment rights and attempting to silence VTP from future First Amendment activities, including

18

filing legitimate FOIA requests with the City regarding its governmental practices. (ECF No. 12, PageID.253 ¶ 78-79.)

The Complaint plausibly alleges facts demonstrating that the foregoing elements are met. Drawing all inferences in the light most favorable to VTP, the City's misconduct suggests retaliation for VTP's protected speech. Therefore, the City's motion to dismiss VTP's First Amendment Retaliation claim must be dismissed.

### ii.    Substantive Due Process.

Deliberate, irrational governmental action violates due process guarantees. *Daniels v. Williams,* 474 U.S. 327, 331 (1986) (due process clause intended to secure the individual from the arbitrary exercise of the powers of government). Substantive Due Process protects a plaintiff from "arbitrary and capricious" behavior in connection with deprivation of a property interest regardless of whether appropriate procedural due process was given. *Range v. Douglas,* 763 F.3d 573, 588 (6th Cir. 2014).

The City argues that it "has a legitimate government interest in enforcing its building codes" and that "[t]he City's enforcement of the rental property ordinance in this case was rationally related to that interest." (ECF No. 14, PageID.445.) Further, the City argues "Plaintiffs do not allege any conduct which is 'conscious shocking' in nature." (ECF No. 14, PageID.446.)

In arguing that VTP failed adequately to plead its Substantive Due Process claim, the City either misrepresents the applicable law, or improperly rely on assertions that cannot be considered in a 12(b)(6) Motion. For one, the City's contention that VTP did not allege any conduct which is conscious shocking in nature is not true. As pled, the Complaint clearly alleges on its face:

> "[T]he City's decision to issue voluminous, vague correction notices against VTP and subsequently refusing to provide available evidence supporting the corrections constitutes conscience-shocking behaviors. Particularly because the City has threatened to deprive VTP of its legal tangible interest in its Properties and the legal tangible interest in its business at the Properties if VTP's fails to comply with the correction notices. There is no rational governmental interest in the City's refusal to provide information to VTP that is necessary to comply with the City's vague correction notices." … "The City's conduct is so arbitrary and capricious such that it shocks the conscience, considering that it has ordered VTP to cease leasing of the property thereby crippling VTP's business operations, all without unbiased and rational justification." (ECF No. 12, PageID.266-267 ¶148-149 & 152.)

The City improperly argues its version of events and urges that Court to not just make inferences against VTP, but to disregard its well-pled factual allegations altogether. The facts pled in the Complaint adequately establish a Substantive Due Process claim in this case. Because the City refused to provide information to VTP that was absolutely necessary to comply with the City's vague correction notices while also threatening to deprive VTP of its legal tangible interest in its Properties if VTP's failed to comply with the correction notices, the City's actions are arbitrary, capricious, and irritational. Moreover, the City cannot reasonably argue that it was

20

acting pursuant to a legitimate governmental interest when it actively engaged in conduct that prevented VTP from making the corrections that the City deemed necessary to protect the health, safety, and welfare of the public. The Complaint plausibly alleges facts demonstrating that the foregoing elements are met. Therefore, the City's motion to dismiss VTP's Substantive Due Process claim must be dismissed.

Moreover, it would be premature for the Court to tackle these issues at the motion to dismiss stage because they are issues of fact best suited for a jury to determine according to well-established case law.

### iii.    Mandamus.

The City argues "[w]hile federal courts may issue writs of mandamus to enforce rights protected by federal law, there must be some federal right attached to the request for mandamus relief. Plaintiffs' federal claims either fail to state claims upon which relief may be granted or fail as a matter of law. Accordingly, their mandamus claim also fails." (ECF No. 14, PageID.448.)

However, as set forth above, VTP has sufficiently pled its federal claims or there are genuine issues of material fact concerning VTP's federal claims. Accordingly, the City's reliance on dismissal of VTP's federal claims under Rule 12(b)(6) and Rule 56 as a basis for dismissing the Mandamus claim is misplaced.

Additionally, as alleged in the Complaint, under the All Writs Act, 28 U.S.C. § 1651, "federal courts may issue all writs necessary or appropriate in aid of their respective jurisdictions, including writs in the nature of mandamus." *Haggard v. Tennessee*, 421 F.2d 1384, 1385 (6th Cir. 1970). (ECF No. 12, PageID.268 ¶ 163.) A federal court may issue a Writ of Mandamus ordering a state official to enforce rights protected by federal law. *Hoffman v. Stump,* 172 F.3d 48; 1998 WL 869972 at *6 (6th Cir. 1998) (unpublished) (citing *CBS Inc. v. Young,* 522 F.2d 234 (6th Cir. 1975) and *Benjamin v. Malcolm,* 803 F.2d 46 (2d Cir. 1986); *State ex rel. Skaggs v. Brunner,* 588 F. Supp. 2d 828, 833 (S.D. Ohio 2008).

"Because VTP's claims seek enforcement of its First Amendment, Equal Protection, and Due Process rights under the Constitution of the United States, this Court may issue a writ of mandamus ordering city officials to enforce those rights." (ECF No. 12, PageID.269 ¶ 165.) As such, the allegations in the Complaint are sufficient to warrant the Court's issuance of a Writ of Mandamus directing the City to re-issue its COC or at minimum, issue VTP a temporary COC.

Moreover, as pled, in the absence of special statutory authority described above, a federal court can issue writs of mandamus as ancillary to and in aid of jurisdiction otherwise vested in it. *Haggard,* 421 F.2d at 1386 (1970). (*Id*. ¶ 166.) As such, contrary to the City's arguments, the Court may also exercise supplemental

22

jurisdiction of a state law Mandamus claim and issue a Writ of Mandamus under MCL 600.4411 that compels state officers to enforce federal rights. (*Id*. ¶ 167.)

As set forth above and in the Complaint, VTP has sufficiently pled its Mandamus claim, VTP has a clear and indisputable' right to issuance of the writ and the Court is well within its authority to grant such relief. The City's motion to dismiss VTP's Mandamus claim must be denied.

### C.    In the Alternative, VTP Should be Granted Leave to Amend.

Historically, leave to amend shall "be freely given when justice so requires." *Morse v. McWhorter,* 290 F.3d 795, 799 (6th Cir. 2002) (quoting Fed. R. Civ. P. 15(a)) (citation omitted). The discretion to grant leave to amend is left to the "sound discretion of the district court." *Estes v. Kentucky Utilities Co.,* 636 F.2d 1131, 1133 (6th Cir. 1980). The allegations in the Complaint provide more than conclusory allegations and provide sufficient factual allegations. However, should the Court disagree, VTP believes that any procedural defects that the Court may identify are susceptible to correction in a Second Amended Complaint. As such, leave to amend should be granted, if deemed necessary.

## V.    CONCLUSION

For the reasons discussed herein, VTP respectfully requests that the Court deny the City's motion to dismiss in its entirety. Alternatively, VTP should be granted leave to amend.

4910-8508-4688_1

Respectfully submitted,

BODMAN PLC

By:  /s/ *J. Adam Behrendt*
J. Adam Behrendt (P58607)
Debani T. Gordon Lehman (P83909)
201 West Big Beaver, Suite 500
Troy, Michigan 48084
(248) 743-6000
*Attorneys for Plaintiffs*

Dated:  January 17, 2025                                       jbehrendt@bodmanlaw.com
dgordon@bodmanlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that, on January 17, 2025, I filed the forgoing document via

the ECF system, which shall provide electronic notice to all counsel of record.

/s/ *J. Adam Behrendt*