Case 2:24-cv-12646-MFL-KGA   ECF No. 25-5, PageID.657   Filed 04/17/26   Page 1 of 17

# EXHIBIT 4

4

Case 2:24-cv-12646-MFL-KGA   ECF No. 25-5, PageID.658   Filed 04/17/26   Page 2 of 17

PART II - CODE OF ORDINANCES
Chapter 18 - BUILDINGS AND BUILDING REGULATIONS
ARTICLE VI. INSPECTION AND CONTROL OF CERTAIN BUILDINGS

# *ARTICLE VI. INSPECTION AND CONTROL OF CERTAIN BUILDINGS[1]*

## *DIVISION 1. GENERALLY*

### Sec. 18-111. Definitions.

The following words, terms and phrases when used in this article shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning:

*Certificate of compliance* means an official document titled "certificate of compliance" issued by the city building inspection department for a multiple dwelling or one-or two-unit rental dwelling indicating that the covered unit(s) identified thereon are is in compliance with all applicable provisions of this Code, particularly the property maintenance code and the fire prevention code.

*Dangerous buildings* means a building or structure that has one or more of the following defects or is in one or more of the following conditions:

(1) A door, aisle, passageway, stairway, or other means of exit does not conform to the approved fire code of the city.

(2) A portion of the building or structure is damaged by fire, wind, flood, or other cause so that the structural strength or stability of the building or structure is appreciably less than it was before the catastrophe and does not meet the minimum requirements of the city building code for a new building or structure, purpose, or location.

(3) A part or appurtenance of the building or structure is likely to fall, become detached or dislodged, or collapse and injure persons or damage property.

(4) A portion of the building or structure has settled to such an extent that walls or other structural portions of the building or structure have materially less resistance to wind than is required in the case of new construction by the building code of the city.

(5) The building or structure, or a part of the building or structure, because of dilapidation, deterioration, decay, faulty construction, or the removal or movement of some portion of the ground necessary for the support, or for other reason, is likely to partially or completely collapse, or some portion of the foundation or underpinning of the building or structure is likely to fall or give way.

(6) The building, structure, or a part of the building or structure is manifestly unsafe for the purpose for which it is used.

(7) The building or structure is damaged by vandalism, fire, wind, or flood, or is dilapidated or deteriorated and becomes an attractive nuisance to children who might play in the building or structure to their danger, or becomes a harbor for vagrants, criminals, or immoral persons, or enables persons to resort to the building or structure for committing a nuisance or an unlawful or immoral act.

---

[1]State law reference(s)—Provisions of housing law pertaining to the inspection of multiple dwellings, MCL 125.523 et seq.

Ypsilanti, Michigan, Code of Ordinances
(Supp. No. 15)

Created: 2024-05-01 10:03:48 [EST]

Page 1 of 16

(8) A building or structure used or intended to be used for dwelling purposes, including the adjoining grounds, because of dilapidation, decay, damage, faulty construction or arrangement, or otherwise, is 1) unsanitary or unfit for human habitation, or 2) in a condition that the health officer of the city or county determines is likely to cause sickness or disease, or 3) likely to injure the health, safety, or general welfare of people living in the dwelling.

(9) A building or structure is vacant, dilapidated, and open at door or window, leaving the interior of the building exposed to the elements or accessible to entrance by trespassers.

(10) A building or structure remains not "regularly occupied" for a period of 180 consecutive days or longer, and is not listed as being available for sale, lease, or rent with a real estate broker licensed under article 25 of the occupational code, Act No. 299 of the Public Acts of Michigan of 1980, being MCL 339.2501—339.2515. For purposes of this subdivision, "building or structure" includes, but is not limited to, a commercial building or structure. This subdivision does not apply to any of the following:

    a. A building or structure as to which the owner or agent does both of the following:

        1. Notifies the city building department in writing that the building or structure will remain not "regularly occupied" for a period of 180 consecutive days. The notice shall be given to the building department by the owner or agent not more than 30 days after the building or structure becomes not "regularly occupied."

        2. Maintains the exterior of the building or structure and adjoining grounds in accordance with the this Code.

    b. A secondary dwelling of the owner that is normally not "regularly occupied" for a period of 180 days or longer each year, if the owner notifies the city building department in writing that the dwelling will remain not "regularly occupied" for a period of 180 consecutive days or more each year. An owner who has given the notice prescribed by this subparagraph shall notify the building department in writing not more than 30 days after the dwelling no longer qualifies for this exception. As used in this subparagraph, "secondary dwelling" means a dwelling such as a vacation home, hunting cabin, or summer home, that is "regularly occupied" by the owner or a member of the owner's family during part of a year.

    c. A new building or new structure under construction that meets all of the following conditions: 1) has a valid building permit, 2) demonstrates that significant and continuous progress is being made toward completion, 3) secures the property and takes all other necessary safety precautions, and 4) otherwise complies with this division and all applicable laws, ordinances, and regulations.

*Dwelling unit* means one or more rooms with principal kitchen facilities designed as a unit for occupancy by only one family for cooking, living and sleeping purposes, together with the common areas which support the unit, including the exterior of the structure as it relates to the unit.

*Multiple dwellings* means a building containing three or more dwelling units and/or sleeping units.

*One- or two-unit rental dwelling* means a building wherein:

(1) Any payment for the use of one or more dwelling units or one or more sleeping units, including, but not limited to, payment of money or goods or the performance of services or labor or the payment of taxes or utilities, is made; or

(2) Any one or more dwelling units or one or more sleeping units are occupied and the building is not owner occupied.

*Occupant* means any person living or sleeping in a building; or having possession of a space within a building.

*Occupied* means a building or portion thereof that has an occupant.

Created: 2024-05-01 10:03:47 [EST]

(Supp. No. 15)

*Owner/agent* means an individual who is either an owner or agent who has been designated pursuant to section 18-131(e) as the "owner/agent."

*Regularly occupied* means a building or portion of a building that is lawfully utilized or lawfully occupied for the purpose for which it is lawfully intended and designed and which if its intended purpose is residential normally has at least one person lawfully living or sleeping in it daily and which if its intended purpose is nonresidential normally has persons lawfully in it and utilizing it on a basis consistent with its lawful nonresidential purpose. Persons solely in the building for the purpose of maintenance, repair, or cleaning of the building do not make the building "regularly occupied."

*Sleeping unit* means a room which is rented or leased primarily for sleeping purposes, not having kitchen and bath facilities within the unit, i.e., sleeping room, together with the common areas, including bath and kitchen facilities, which support the unit, including the exterior of the structure.

*Temporary certificate* means a certificate of compliance issued for a multiple dwelling or one- or two-unit rental dwelling following inspection, which is found to be substantially in compliance.

*Triggering event* means any one or more of the following events that occur at a vacant building, the property on which it is located, or its adjacent right-of-way:

    (1)    Law enforcement response.

    (2)    Fire or emergency personnel response.

    (3)    Ordinance enforcement and subsequent abatement, including, but not limited to: grass, weed, or brush violations; litter, trash, or cleanup violations; graffiti violations; vehicle or zoning vehicle violations; animal complaints; and unsecured or non-weather tight structure.

    (4)    Remains a vacant building for 12 months or more.

    (5)    Issuance of a citation or complaint to correct exterior violations, apparent or existing, of the Property Maintenance Code as adopted by the City of Ypsilanti.

*Vacant building* means a building or structure that meets one or more of the following:

    (1)    Is not "regularly occupied" for a period greater than 30 days, excepting homestead property or rental property occupied in the manner of homestead property.

    (2)    Is condemned.

    (3)    Does not have a valid certificate of occupancy or certificate of compliance.

(Code 1983, § 6.73; Ord. No. 862, § 6.73, 9-2-1997; Ord. No. 969, 12-3-2002; Ord. No. 974, 1-21-2003; Ord. No. 975, 1-21-2003; Ord. No. 1002, § 1, 3-1-2005)

Cross reference(s)—Definitions generally, § 1-2.

## Sec. 18-112. Inspections.

(a)    *Generally.* The city building inspection department shall forthwith undertake systematic inspection of all multiple dwellings and one- or two-unit rental dwellings for the purpose of determining whether the units therein are in compliance with the codes noted above. Those multiple dwellings or one- or two-unit rental dwellings which are in compliance shall be issued a certificate of compliance.

(b)    *Phase-in of requirement.* The building inspection department shall inspect or cause to be inspected all multiple dwellings and one- or two-unit rental dwellings at two-year intervals for purposes of determining whether such units qualify for a certificate of compliance. It is anticipated that all multiple dwellings units shall have been inspected once and shall have complied with the city Code to qualify for such a certificate of

Created: 2024-05-01 10:03:47 [EST]

(Supp. No. 15)

compliance by September 1, 1986. It is anticipated that all one- or two-unit rental dwellings shall have been inspected once and shall have complied with the city Code to qualify for such a certificate of compliance by September 1, 1999.

(Code 1983, § 6.74(1), (2); Ord. No. 862, § 6.74(1), (2), 9-2-1997; Ord. No. 969, 12-3-2002)

## Sec. 18-113. Scope of inspection authority.

Nothing in this article shall be construed to restrict the lawful authority of the building inspection department to inspect any units in the city more frequently than such periodic inspection as outlined in the previous sections, such as when a complaint is filed or it otherwise has reasonable cause to believe the unit is in violation of the city Codes.

(Code 1983, § 6.75)

## Sec. 18-114. Registry of certificate holders.

The city building inspection department shall maintain a registry of all multiple dwellings or one- or two-unit rental dwellings which have obtained valid certificates of compliance. Such registry shall be available for inspection by any person.

(Code 1983, § 6.80(2); Ord. No. 969, 12-3-2002)

## Sec. 18-115. Blight violation.

A person who violates any provision of this article is responsible for a blight violation, subject to payment of a civil fine as set forth in section 71-73. Repeat offenses under this article shall be subject to increased fines as set forth in section 71-73. The imposition of a fine for any violation shall not excuse the violation nor permit the violation to continue, and all such persons shall be required to correct or remedy such violations or defects within a reasonable time, and when not otherwise specified, each day that violations continue shall constitute a separate offense.

(Ord. No. 935, 5-1-2001; Ord. No. 1107, 10-20-2009; Ord. No. 1198, § 1, 10-1-2013)

Editor's note(s)—Ord. No. 1198, § 1, adopted Oct. 1, 2013, changed the title of § 18-52 from "misdemeanor" to the present title.

## Sec. 18-116. Examination of certificate of compliance by occupant or prospective occupant.

The owner or owner's agent shall upon request permit the certificate of compliance or temporary certificate covering a unit to be examined by an occupant or prospective occupant for such unit.

(Code 1983, § 6.80(1); Ord. No. 969, 12-3-2002)

## Sec. 18-117. Reinspection: presumptions.

(a)   *Failure to have property timely reinspected.* Following inspection and notice of violations, should the owner, the owner's agent, or the person responsible for the structure fail to have the property reinspected prior to the date specified for correction of the violations or by any extended date granted by the building department supervisor, it shall be presumed that any violations in the notice of violations that have not been

Created: 2024-05-01 10:03:48 [EST]

(Supp. No. 15)

previously reinspected and approved have not been corrected and the owner shall be responsible for failing to repair those violations as if they had not been corrected.

(b)   *Inability to conduct reinspection.* Should the city building department not be able to gain entry to a property for inspection for a properly scheduled reinspection then it shall be presumed that any violations in the notice of violations that have not been previously reinspected and approved have not been corrected and the owner shall be responsible for failing to repair those violations as if they had not been corrected.

(Ord. No. 927, 3-6-2001)

## Secs. 18-118—18-130. Reserved.

## *DIVISION 2. REGISTRATION*

### Sec. 18-131. Required.

(a)   All persons owning a multiple dwelling, a one- or two-unit rental dwelling, or a vacant building shall register with the building inspection department indicating their name, address, telephone number and the address of all such structures owned by them, including the number and types of units in each structure, and whether such structures is vacant or "regularly occupied". Vacant buildings must be registered separately as vacant buildings even if already registered as a multiple dwelling or a one- or two-unit rental dwelling.

(b)   If the premises are managed or operated by an agent, the owner shall supply the agent's name, address and telephone number and indicate that such agent is authorized to receive notices and process under this article.

(c)   If the owner is a corporation, the names, addresses and telephone numbers of its officers shall be listed. If such corporation has no substantial assets other than the dwelling in question and is controlled in whole or in part by another corporation or corporations, then the name and address of the corporations and the names, addresses and telephone numbers of the officers shall be listed.

(d)   Any change in address of the owner or agent and any change in the number of units offered shall be noted in the registry by the owner or the agent.

(e)   For all multiple dwellings, one- or two-unit rental dwellings, and vacant buildings, an individual who is either an owner or an agent must be designated as the "owner/agent." For each "owner/agent," the following information shall be provided: name (including Jr., III, etc., and middle name if the individual's driver's license or state identification contains such information), address, driver's license number or State of Michigan identification number, date of birth, race, sex, height, weight, hair color, and eye color. All changes to the "owner/agent" and to the information required by this subsection must be provided to the City of Ypsilanti building department in writing within 14 days of the change. The designation of an individual as the "owner/agent" shall be prima facie evidence that the named individual has sufficient control over the building to be named as a defendant in a legal action to enforce compliance with the applicable provisions of the Ypsilanti City Code with regard to buildings and fire prevention.

(Code 1983, § 6.83; Ord. No. 969, 12-3-2002; Ord. No. 974, 1-21-2003)

## Secs. 18-132—18-145. Reserved.

## *DIVISION 3. CERTIFICATE OF COMPLIANCE*

Created: 2024-05-01 10:03:48 [EST]

(Supp. No. 15)

### Sec. 18-146. Required.

No person, including but not limited to the owner, the owner/agent, and the owner's agent, shall rent, lease, or allow occupancy of a dwelling unit or sleeping unit after September 1, 1986, in a multiple dwelling or after September 1, 1999, in a one- or two-unit rental dwelling, unless that owner, owner/agent, or owner's agent has first obtained a valid certificate of compliance from the city building inspection department covering that unit.

(Code 1983, § 6.74(3); Ord. No. 862, § 6.74(3), 9-2-1997; Ord. No. 870, 4-21-1998; Ord. No. 969, 12-3-2002; Ord. No. 1287, § 1, 5-4-2017)

### Sec. 18-147. Application.

The owner or the owner's agent shall apply for a certificate of compliance by submitting a completed application form to the city building inspection department. The application form shall contain the following information:

(1)　The address of the premises to be inspected.

(2)　The name, address and telephone number of owner.

(3)　The name, address and telephone number of any authorized agent.

(4)　Hours that the owner or agent are usually available to admit and accompany the building official for inspection.

(5)　The number and kinds of units located on the premises.

(Code 1983, § 6.76)

### Sec. 18-148. Notice of intent to inspect.

If the owner or the owner's agent shall not apply for a certificate of compliance the building inspection department will send notices of its intent to inspect a multiple dwelling or a one or two unit rental dwelling to the owner or agent. Owners or agents having residence or business addresses within the county shall have 14 days from the date of mailing to submit the completed application, fees and request for appointment. Out of county owners or agents, provided no agent has a business address in the county, shall have 21 days from the date of mailing to submit the completed application form, the fees and a written request for appointment.

(Code 1983, §§ 6.76, 6.77(1); Ord. No. 862, § 6.77(1), 9-2-1997)

### Sec. 18-149. Issuance.

A certificate of compliance shall be issued for a multiple dwelling or one- or two-unit rental dwelling with no violations and for which all current registration information has been provided on condition that the premises remain in safe, healthful and fit condition for occupancy. The owner of the property, the address of the complying multiple dwelling or one- or two-unit rental dwelling and the expiration date shall be shown thereon. If upon reinspection, the building official determines that violations exist or the certificate has expired, the certificate shall be immediately suspended, the affected areas may be ordered vacated until the multiple dwelling or one- or two-unit rental dwelling is brought into compliance, and a temporary certificate may be issued pursuant to section 18-150 covering units not ordered vacated.

(Code 1983, §§ 6.73(1)(b), 6.79; Ord. No. 969, 12-3-2002)

### Sec. 18-150. Temporary certificate.

A temporary certificate of compliance may be issued for a multiple dwelling or one- or two-unit rental dwelling following inspection, which is found to be substantially in compliance, provided there are no imminent life, health or safety-threatening violations and provided that all current registration information has been provided. The temporary certificate shall state on its face any remaining violations to be corrected and state that it will expire if such violations are not corrected within the time specified by the building official or reasonable extensions thereof which shall be noted on the certificate. Failure by the owner or the owner's agent to correct the violations within the time specified by the building official shall constitute a violation of this Code and the multiple dwelling or one- or two-unit rental dwelling shall be ordered vacated.

(Code 1983, § 6.73(1)(a); Ord. No. 969, 12-3-2002)

### Sec. 18-151. Expiration and reinspection procedures.

Certificates of compliance shall expire two years after the date issued unless earlier suspended by the building department, or if the structure(s) are eligible for a three-year certificate of compliance, as outlined below. The date of issuance, date of expiration and certificate period shall be indicated on the certificate. Certificate periods shall begin on the beginning of the month of the first full inspection.

A three-year certificate of compliance can be issued for a rental property if all of the following requirements are met:

(1) There are no apparent health and safety violations.

(2) There are less than five non-health and safety violations in the unit and have been corrected within the first re-inspection.

(3) There are no outstanding fees or fines owed on the property.

(4) The property owner has obtained all required permits for work within the building.

(5) The owner or owner's agent has requested a recertification inspection at least 60 days prior to expiration of the current certificate.

At least three months before the current, valid certificate of compliance expires, it is the duty of the owner of the property to arrange for the inspection necessary for the issuance of a new certificate prior to the expiration of the previous certificate. If the owner does not timely schedule the inspection, the building inspection department will schedule the inspection and send out a notice to the owner or the owner's agent. The building inspection department will schedule all necessary subsequent inspections following the initial scheduled inspection, whether or not the inspection was performed, and send out notices to the owners or the owners' agents for those re-inspections.

(Code 1983, § 6.81; Ord. No. 969, 12-3-2002; Ord. No. 1004, § 1, 5-3-2005; Ord. No. 1034, § 1, 3-21-2006; Ord. No. 1387, § 1, 4-5-2022)

### Sec. 18-152. Transferability.

(a) Certificates of compliance shall be transferable when the ownership of a building changes provided that the building has a valid certificate of compliance or valid temporary certificate of compliance in effect covering each dwelling unit or sleeping unit which the new owner intends to rent, lease, or allow occupancy of in the multiple dwelling or one- or two-unit rental dwelling. The new owner must sign a statement that the new

owner will not rent, lease, or allow occupancy of a dwelling unit or sleeping unit not covered by a valid certificate: each unit not covered by the certificate must be individually listed in the statement.

(b)     It shall be the duty of the new owner to register with the building inspection department, consistent with section 18-131. The certificate of compliance shall not be transferred until the registration requirement is satisfied.

(Code 1983, § 6.82; Ord. No. 969, 12-3-2002)

### Sec. 18-153. Fees.

The owner of the property shall be responsible for payment of the fee which is set by resolution of the city council and on file at city hall.

(Code 1983, § 6.77)

### Sec. 18-154. Collection of fees.

(a)     The fees charged pursuant to section 18-153, when appointments have been made shall be payable at the time of making the appointment for the inspection or reinspection.

(b)     When no appointment is made by the owner prior to the inspection or reinspection taking place, then the charge for the inspection shall be printed on a statement which shall be submitted to the owner or the owner's agent for payment. This amount shall be due and payable when the statement is issued.

(1)     The amount due under this section shall accrue interest at the rate of six percent per annum from the date 30 days following issuance of the statement.

(2)     The recorded statement constitutes a lien. When the full amount due the city is not paid by such owner within 30 days following the date of the statement as provided in subsection (b)(1) of this section, then and in that case, the city clerk shall cause to be recorded in the assessor's office a sworn statement showing the charge for the inspections, the date the inspection was done and the location of the property on which the inspection was conducted. The recordation of such sworn statement shall constitute a lien and privilege on the property and shall remain in full force and effect for the amount due in principal and interest, plus costs of court, if any, for collection, until final payment has been made. Such costs and expenses shall be collected in the manner fixed by law for the collection of taxes, and further, shall be subject to a delinquent penalty of six percent in the event the costs and expenses are not paid in full on or before the date the tax bill upon which such charge appears to become delinquent. Sworn statements recorded in accordance with the provisions hereof shall be prima facie evidence that all legal formalities have been complied with and that the inspection has been conducted and shall be full notice to every person concerned that the amount of the statement, plus interest, constitutes a charge against the property designated or described in the statement and that the costs and expenses are due and collectible as provided by law.

(Code 1983, § 6.78)

### Sec. 18-155. Water shutoff for rental units lacking certificate of compliance.

(a)     The city superintendent of water, or any YCUA employee, shall shut off and seal the water valve to any one, two, or multiple unit rental dwelling upon request of the city building inspection department whenever the property lacks a valid certificate of occupancy or certificate of compliance as required hereunder.

(b)     Water shall not be shut off until the unit is vacant.

Created: 2024-05-01 10:03:48 [EST]

(Supp. No. 15)

(c)     Water shall not be turned on until a certificate of compliance has been issued for the unit and all fees and charges have been paid to date.

(d)     Water service may be re-instated prior to the issuance of a certificate of occupancy only in the event the owner provides a cash bond in the amount of $1,000.00 posted to the city treasurer, upon the condition that the property will not be occupied prior to the issuance of a certificate of occupancy.

(e)     In the event that the said property is occupied prior to the issuance of a certificate of occupancy, the cash bond of $1,000.00 is forfeited, and notice of the same shall be given to the owner by regular, first class mail.

(f)     The owner may appeal the forfeiture to the city manager whose decision shall be final.

(g)     The bond shall be returned to the owner, if it has not been forfeited, only upon the issuance of a certificate of compliance.

(Ord. No. 950, 11-20-2001; Ord. No. 1150, § 1, 4-19-2011; Ord. No. 1151, § 1, 4-19-2011)

**Secs. 18-156—18-165. Reserved.**

## *DIVISION 4. UNIT REQUIREMENTS*

**Sec. 18-166. Security measures.**

All individual dwelling units and sleeping units other than owner occupied, one- or two-family dwellings shall be equipped with the following security devices:

(1)     All windows and doors leading to the exterior of the dwelling unit shall be equipped with locking devices.

(2)     All swinging exterior doors which are accessible from the exterior of the unit shall be equipped with deadbolt locks meeting the following specifications:

   a.     A lock shall have a one-inch minimum throw. Locks installed before September 17, 1984, may have a five-eighths-inch throw unless they are replaced. After September 17, 1986, all such locks shall have a one-inch throw.

   b.     A lock shall be so constructed that the bolt shall be retracted by the action of a single inside knob, thumbturn or lever.

   c.     A lock must be capable of being deadlocked (not springloaded) from the interior and by an exterior key.

   d.     The strike plate shall be securely attached to the frame of the doorway. For strike plates installed or replaced after September 17, 1984,

the strike plate shall be attached by woodscrews, a minimum of two inches in length, if the frame is made of wood.

    (3)    Exterior doors which are required by this Code as means of egress shall not be equipped with locks which require a key for operation from the interior side from which egress is to be made.

    (4)    All double-hung windows must be equipped with sash locks securely attached to the inner window frame by screws a minimum of three-fourths of an inch in length. Double-hung windows which are at ground level or otherwise accessible from the exterior shall also be equipped with steel pin locks. The pins for such locks shall be secured to the window frame. The pins shall be insertable into holes drilled at a slight downward angle through the inner frame and approximately halfway into the outer frame. The pins shall not require the use of a tool for removal.

    (5)    Sliding windows and doors at ground level or otherwise accessible from the exterior must be equipped with a rod at least three-fourths-inch in width or diameter and of such length as to prevent the window or door from being opened when the rod is laid in the lower track.

    (6)    Every entrance door which does not contain a window shall be equipped with a wide-angle peephole door viewer.

(Code 1983, § 6.84)

## Secs. 18-167—18-189. Reserved.

## *DIVISION 5. VACANT BUILDINGS*

## Sec. 18-190. Inspections.

(a)    *Generally.* The city building department with the assistance of the city fire department and/or fire marshal, shall forthwith undertake systematic inspection of all vacant buildings in the city. Vacant buildings shall be re-inspected periodically.

(b)    *Scope of inspection.* The inspection shall include review of building security including the means used to prevent unauthorized access, and all fire risks and potential hazards, including but not limited to, structural building materials (type and age), renovations that may be encountered during a fire, unprotected hazardous materials and fuel packages, open shafts, pits and holes due to removal of equipment, structural degradation due to weather and vandalism, exposed structural members, penetrations in barriers such as walls, floors, and ceilings that allow abnormal fire travel, combustible contents, maze-like configurations, blocked or damaged stairs, and whether fire alarm and suppression systems are present and working.

(c)    *Cost of inspections.* A fee for the cost of the inspections shall be set by resolution of the city council. The owner, the owner's agent, or the "owner/agent" of the vacant building shall be individually and severally responsible for the fee.

(d)    *Scheduling.*

    (1)    The owner, the owner's agent, or the "owner/agent" of the vacant building shall schedule the initial inspection at the time they register the vacant building. The inspection shall be scheduled for inspection within 30 days of the date that the building qualified as a vacant building. Thereafter, at each inspection, if not scheduled previously, the next monthly inspection shall be scheduled.

    (2)    Unsecured vacant buildings shall be inspected forthwith pursuant to section 18-221 to determine whether such building or structure is a dangerous building.

Created: 2024-05-01 10:03:48 [EST]

(Supp. No. 15)

(3)     Unregistered vacant buildings shall be inspected forthwith pursuant to section 18-221 to determine whether such building or structure is a dangerous building and monthly thereafter under section 18-221.

(e)     *Waiving of fees.* The fees shall be waived for the following vacant buildings:

(1)     Vacant buildings that have not had a triggering event occur during the period it qualifies as a vacant building or within 60 days prior to its initial designation as a vacant building.

(2)     A new or existing building or structure undergoing significant construction progress on a continual basis without a triggering event other than remaining a vacant building for 12 months or more.

(Ord. No. 974, 1-21-2003; Ord. No. 2001, § 1, 3-1-2005)

## Sec. 18-191. Posting dangerous vacant buildings.

All vacant buildings identified as dangerous to firefighters at the time of inspection shall have warning placards affixed to all entrance doorways and other openings where firefighters may enter. The warning placards shall be as approved by the city fire marshal for both design and location.

(Ord. No. 974, 1-21-2003)

## Sec. 18-192. Removing warning placard.

No person other than an authorized city official shall remove a warning placard from a vacant building, or otherwise cover, deface, hide the placard.

(Ord. No. 974, 1-21-2003)

## Sec. 18-193. Unsecured vacant buildings.

Vacant buildings must be secured to prevent unauthorized access. If the building department, fire department, police, or fire marshal finds a vacant building to be unsecured for any reason and the owner(s) or other responsible party is unable to be immediately contacted or cannot adequately secure the vacant building within one hour; and where it is determined that it is inappropriate to delay making such vacant building secure; such facts shall be reported to the building official or fire marshal who shall cause the immediate securing of the vacant building. The costs of such immediate securing shall be the responsibility of the owner or party in interest which costs shall be paid within two weeks. The city may choose to deduct such costs from any escrow established pursuant to section 18-194 for such building and/or the city may collect such costs as set forth in section 18-195.

(Ord. No. 974, 1-21-2003)

## Sec. 18-194. Escrow account.

(a)     *Generally.* All persons owning a vacant building at which one or more triggering events have occurred during the period it qualifies as a vacant building or within 60 days prior to its initial designation as a vacant building shall deposit an amount as designated below monthly unless specifically waived in an escrow account with the city until the structure no longer qualifies as a vacant building. Interest, if any, earned on the escrow account shall be retained by the city to reimburse the city for its costs in maintaining the account. The city may deduct from the escrow account its fees for inspections of the vacant buildings, any costs incurred by the city in securing the vacant building, any emergency costs it incurs with regard to the vacant building, and any other costs which it is otherwise authorized by law to deduct. If the vacant building is "regularly

occupied" and no longer qualifies as a vacant building, any funds remaining in the escrow account, after all costs are subtracted, shall be returned to the current owner, owner's agent, or the "owner/agent." If the vacant building is not repaired, renovated, and "regularly occupied", and becomes a dangerous building as defined by the city code, the city may apply the funds in the escrow account toward the repair or demolition of the building or toward such other action as the law allows.

(1) For a vacant building that meets all of the following conditions: 1) Presently can be legally "regularly occupied," 2) Is secured and all other necessary safety precautions have been taken, 3) Both the interior and exterior of the building and premises are maintained, and 4) Other than being vacant, complies with this division and all applicable laws, ordinances, and regulations, the monthly escrow is waived.

(2) A new or existing building or structure undergoing significant construction progress on a continual basis without a triggering event other than remaining a vacant building for 12 months or more shall have the monthly escrow waived.

(3) For all other vacant buildings, including buildings also designated as dangerous, the monthly escrow shall be $300.00.

(b) *Sale or transfer.* Escrow funds shall not be refunded upon the sale or transfer of a vacant building unless the vacant building is "regularly occupied" and no longer qualifies as a vacant building. Nothing in this provision authorizes the sale or transfer of a vacant building that it is not lawful to otherwise sell or transfer. Persons desiring to be reimbursed for the escrow funds should address that issue with the persons or persons to whom the vacant building is being sold or otherwise transferred.

(Ord. No. 974, 1-21-2003; Ord. No. 1002, § 1, 3-1-2005)

## Sec. 18-195. Collection and lien for costs and unpaid escrow.

If the owner, agent, or owner/agent fails to pay the cost or escrow within 30 days after mailing by the assessor of the notice of the amount of the cost or escrow, the city shall thereupon place the entire sum, plus collection charge as set by resolution of the city council, on the tax rolls as an assessment against the parcel or lot, the assessment to be collected as other taxes are levied and collected. Such charges shall be added to the general city tax roll, and to the total of the taxes levied on such parcel or lot for the same year. The city shall have a lien for the cost incurred by the city to bring the property into conformance with this division, for any unpaid escrow, and for any charges imposed until the amounts have been fully paid. The lien shall not take effect until notice of the lien has been filed or recorded as provided by law. A lien provided for in this subsection does not have priority over previously filed or recorded liens and encumbrances. The lien shall be collected and treated in the same manner as provided for property tax liens under the general property tax act, Act No. 206 of the Public Acts of Michigan of 1893, being MCL 211.1 to 211.157, or the applicable sections of the Ypsilanti City Charter and Code.

(Ord. No. 974, 1-21-2003)

## Secs. 18-196—18-219. Reserved.

## DIVISION 6. DANGEROUS BUILDINGS

## Sec. 18-220. Dangerous building prohibited.

It is unlawful for any owner, agent, or owner/agent thereof to keep or maintain any dwelling or part thereof which is a dangerous building. All such dangerous buildings shall be abated by alteration, repair, rehabilitation,

demolition, or removal in accordance with the procedures specified within this division, or, where applicable, the procedures set forth within chapter 54, Historical Preservation, of this Code.

(Ord. No. 975, 1-21-2003)

### Sec. 18-221. Inspections.

A representative of the city building department with the assistance of the city fire department and/or fire marshal shall inspect or cause to be inspected every building or structure or part thereof reported as or observed to be unsafe or damaged, and if such is found to be a dangerous building as defined in this article, the building department shall commence proceedings to cause the repair, rehabilitation, demolition or removal of the building or structure.

(Ord. No. 975, 1-21-2003)

### Sec. 18-222. Notice.

(a) *Issue.* Notwithstanding any other provision of this division, if a building or structure is found to be a dangerous building, the city building department shall issue a notice that the building or structure is a dangerous building.

(b) *Persons who may be served notice.* The notice shall be served on the owner, agent, or owner/agent. If an owner, agent, or owner/agent is not registered under this article, the notice shall be served on each owner of or party in interest in the building or structure in whose name the property appears on the last local tax assessment records.

(c) *Contents, notice of hearing.* The notice shall specify the time and place of a hearing on whether the building or structure is a dangerous building. The person to whom the notice is directed shall have the opportunity to show cause at the hearing why the hearing officer should not order the building or structure to be demolished, otherwise made safe, properly maintained, and/or, where applicable, referred to the historic district commission for a determination of demolition by neglect. Any repairs or maintenance ordered, where applicable, shall comply with the procedures set forth in chapter 54, Historical Preservation, of this Code.

(d) *Hearing officer; filing of notice with officer.* The hearing officer shall be appointed by the mayor and be approved by city council and shall then serve at the mayor's pleasure. The hearing officer shall be a person who has expertise in housing matters including, but not limited to, an engineer, architect, building contractor, building inspector, member of a community housing organization, or any person with similar qualifications. An employee of the city shall not be appointed as hearing officer. The city building department shall file a copy of the notice that the building or structure is a dangerous building with the hearing officer.

(e) *Notice in writing; service.* The notice shall be in writing and shall be served upon the person to whom the notice is directed either personally or by certified mail, return receipt requested, addressed to the address they provided when registering under this article. If the owner, agent, or owner/agent is not registered under this article, the notice shall be addressed to the owner or party in interest at the address shown on the tax records. If a notice is served on a person by certified mail, a copy of the notice shall also be posted upon a conspicuous part of the building or structure. The notice shall be served upon the owner or party in interest at least ten days before the date of the hearing included in the notice.

(Ord. No. 975, 1-21-2003)

Created: 2024-05-01 10:03:48 [EST]

(Supp. No. 15)

### Sec. 18-223. Hearing; testimony; decision.

(a) *Generally.* The hearing officer shall take testimony from representatives of the city building department, the city fire department, and/or fire marshal, a representative of the historic district commission where applicable, the owner of the property, and any interested party. Not more than five days after completion of the hearing, the hearing officer shall render a decision either closing the proceedings or ordering the building or structure demolished, otherwise made safe, properly maintained, and/or, where applicable, referred to the historic district commission for a determination of demolition by neglect.

(b) *Order; compliance.* If the hearing officer determines that the building or structure should be demolished, otherwise made safe, or properly maintained, the hearing officer shall so order, fixing a time in the order for the owner, agent, or owner/agent to comply with the order. Any repairs or maintenance ordered, where applicable, shall comply with the procedures set forth in chapter 54, Historical Preservation, of this Code. If the building is a dangerous building under subsection (10) of the definition of dangerous building in section 18-111, the order may require the owner, agent, or owner/agent to maintain the exterior of the building and adjoining grounds owned by the owner of the building including, but not limited to, the maintenance of lawns, trees, and shrubs.

(c) *Failure to appear, noncompliance; filing report of findings; request to enforce order.* If the owner, agent, or owner/agent fails to appear or neglects or refuses to comply with the order issued under section 18-223, subsection (b), the hearing officer shall file a report of the findings and a copy of the order with the city council not more than five days after noncompliance by the owner or owners and request that necessary action be taken to enforce the order. A copy of the findings and order of the hearing officer shall be served on the owner, agent, or owner/agent in the manner prescribed in section 18-222.

(d) *Hearing; notice, show cause why order should not be enforced, decision on order, compliance.* The city council shall fix a date not less than 30 days after the hearing prescribed in subsection (a) for a hearing on the findings and order of the hearing officer and shall give notice to 1) the owner, agent, or owner/agent, and 2) all interested parties, in the manner prescribed in section 18-222 of the time and place of the hearing. At the hearing, any interested party shall be given the opportunity to show cause why the order should not be enforced. The city council shall either approve, disapprove, or modify the order. If the city council approves or modifies the order, the city council shall take all necessary action to enforce the order. If the order is approved or modified, the owner, agent, or owner/agent shall comply with the order within 60 days after the date of the hearing under this subsection. In the case of an order of demolition, if the city council determines that the building or structure has been substantially destroyed by fire, wind, flood, or other natural disaster, and the cost of repair of the building or structure will be greater than the state equalized value of the building or structure, the owner, agent, or owner/agent shall comply with the order of demolition within 21 days after the date of the hearing under this subsection.

(e) *Compliance costs; reimbursement.* The cost of the demolition, of making the building safe, or of maintaining the exterior of the building or structure, or grounds adjoining the building or structure incurred by the city to bring the property into conformance with this division, including the cost of consulting services, investigation, publication charges, attorney fees, court costs, and all administrative expenses shall be reimbursed to the city by the owner or party in interest in whose name the property appears.

(f) *Notification; failure to reimburse; collection and lien for compliance costs.* The owner or party in interest in whose name the property appears upon the last local tax assessment records shall be notified by the assessor of the amount of the cost of the demolition, of making the building safe, or of maintaining the exterior of the building or structure or grounds adjoining the building or structure by first class mail at the address shown on the records. If the owner or party in interest fails to pay the cost within 30 days after mailing by the assessor of the notice of the amount of the cost, the city shall thereupon place the entire sum, plus collection charge as set by resolution of the city council, on the tax rolls as an assessment against the

parcel or lot, the assessment to be collected as other taxes are levied and collected. Such charges shall be added to the general city tax roll, and to the total of the taxes levied on such parcel or lot for the same year. The city shall have a lien for the cost incurred by the city to bring the property into conformance with this division and for any charges imposed until the amounts have been fully paid. The lien shall not take effect until notice of the lien has been filed or recorded as provided by law. A lien provided for in this subsection does not have priority over previously filed or recorded liens and encumbrances. The lien for the cost shall be collected and treated in the same manner as provided for property tax liens under the General Property Tax Act, Act No. 206 of the Public Acts of Michigan of 1893, being MCL 211.1 to 211.157, or the applicable sections of the Ypsilanti City Charter and Code.

(g)   *Action against owner; lien on property.* In addition to other remedies under this Code, the city may bring an action against the owner of the building or structure for the full cost of the demolition, of making the building safe, or of maintaining the exterior of the building or structure or grounds adjoining the building or structure. The city shall have a lien on the property for the amount of a judgment obtained pursuant to this subsection. The lien provided for in this subsection shall not take effect until notice of the lien is filed or recorded as provided by law. The lien does not have priority over prior filed or recorded liens and encumbrances.

(Ord. No. 975, 1-21-2003)

## Sec. 18-224. Judgment; enforcement against assets of owner.

(a)   A judgment in an action brought pursuant to subsection 18-223(g) may be enforced against assets of the owner other than the building or structure.

(b)   Judgment lien. The city shall have a lien for the amount of a judgment obtained pursuant to subsection 18-223(g) against the owner's interest in all real property located in this state that is owned in whole or in part by the owner of the building or structure against whom the judgment is obtained. A lien provided for in this section does not take effect until notice of the lien is filed or recorded as provided by law, and the lien does not have priority over prior filed or recorded liens and encumbrances.

(Ord. No. 975, 1-21-2003)

## Sec. 18-225. Noncompliance with order; misdemeanor.

A person who fails or refuses to comply with an order approved or modified by the city council under section 18-223 within the time prescribed by that section is guilty of a misdemeanor, punishable by imprisonment for not more than 90 days, or a fine of not more than $500.00, or both.

(Ord. No. 975, 1-21-2003; Ord. No. 1002, § 1, 3-1-2005)

## Sec. 18-226. Judicial review.

An owner aggrieved by any final decision or order of the city council under section 18-223 may appeal the decision or order to the circuit court by filing a petition for an order of superintending control within 20 days from the date of the decision.

(Ord. No. 975, 1-21-2003; Ord. No. 1002, § 1, 3-1-2005)

Created: 2024-05-01 10:03:48 [EST]

(Supp. No. 15)

### Sec. 18-227. Emergency situations.

Where it reasonably appears to the city building department, fire department, police, or fire marshal that there is immediate danger to the public safety or health unless a dangerous building as defined in section 18-111 is immediately demolished or otherwise made safe, or whenever any building or structure becomes open at door(s) or window(s), or damaged from vandalism, fire, or other cause, including lawful entry by police enforcement, leaving the interior of the building or structure exposed to the elements, or accessible to entrance by trespassers; and the owner(s) or other responsible party is unable to be immediately contacted or cannot adequately secure the building or structure within one hour; and where it is determined that it is inappropriate to delay making such building or structure secure; such facts shall be reported to the building official or fire marshal who shall cause the immediate repair, demolition, or boarding up of such dangerous building or structure. The costs of such immediate repair, demolition, or boarding up shall be the responsibility of the owner or party in interest which costs shall be paid within two weeks. The city may choose to deduct such costs from any escrow established pursuant to section 18-194 for such building and/or the city may collect such costs as set forth in section 18-223.

(Ord. No. 975, 1-21-2003; Ord. No. 1002, § 1, 3-1-2005)

### Sec. 18-228. Compliance; return to pre-vacant building status.

Dangerous buildings that have been abated by alteration, repair, or rehabilitation, but remain not regularly occupied," shall return to their pre-vacant building status, and all time frames shall be reset so that the building will be considered to have on that day become not "regularly occupied."

(Ord. No. 1002, § 1, 3-1-2005)